Present:  All the Justices

SOUTHERN INSURANCE COMPANY OF VIRGINIA

                                              OPINION BY
v.  Record No. 011583        JUSTICE LAWRENCE L. KOONTZ, JR.
                                            April 19, 2002
JOHN A. WILLIAMS, ET AL.

              FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
                   J. Samuel Johnston, Jr., Judge


     In this appeal, we consider whether the trial court in a

declaratory judgment action correctly determined that an

insurance company had a duty to defend and provide liability

coverage under a "BUSINESSOWNERS" policy.

                            BACKGROUND

     The parties do not dispute the material facts.  On January

6, 1989, John A. Williams applied for a businessowners insurance

policy with an insurance agency representing Southern Insurance

Company of Virginia.  In that application, Williams gave the

name of the "APPLICANT" as "WILLIAMS HOUSE OF FINE FURNITURE"

and gave a street address and post office box number as the

mailing address.[1]  Williams indicated that the "LOCATION OF

PREMISES #1" was the same as the mailing address.  The space on

the application for listing "LOCATION OF PREMISES #2" was left

_____

     [1] At various places in the record, "Furniture" is
abbreviated "Ftr."  For clarity, wherever this abbreviation
occurs, we will substitute the intended word.

blank.  Williams also provided the name of the mortgage holder for the store.

In the appropriate space on the application, Williams indicated that he was applying for the policy as an individual, rather than as a corporation, partnership, or "OTHER" type of business entity.  Under the space for "BUSINESS OF APPLICANT," Williams provided "[Furniture] Store – Mostly Appliances," and under "DESCRIBE OCCUPANCY OF PREMISES," Williams provided "Appliance & [Furniture] Store."  The application listed the applicant's business as "MERCANTILE" under the space for "RISK TYPE(S)."  Williams further indicated on the application that his interest in the premises was as an owner occupying more than 75% of the building.  During the application process he did not tell the agent that he owned any other properties.  In response to the question on the application "DOES APPLICANT OWN ANY OTHER PREMISES, PERFORM OPERATIONS, MANUFACTURE OR SELL PRODUCTS OR HAVE COMPLETED OPERATIONS EXPOSURE?," the box marked "NO" was checked.

The amount of coverage requested in the application was $75,000 for the actual value of the premises, $30,000 for business personal property, and $500,000 of comprehensive business liability coverage.  The annual policy premium for these coverages was $999.

Southern Insurance issued a declaration effective January 6, 1989 to "WILLIAMS HOUSE OF FINE FURNITURE" along with the requested policy.  SECTION I of the policy contained provisions related to property coverages and SECTION II contained those related to comprehensive business liability.

Relevant to this appeal, the policy language in SECTION II included the following definition of the term "insured":

> [I]f the **named insured** is designated in the
> Declarations as an individual, the person so
> designated but only with respect to the conduct of a
> business of which he is the sole proprietor, and the
> spouse of the **named insured** with respect to the
> conduct of such business;
>
> . . . .
>
> [I]f the **named insured** is designated in the
> Declarations as other than an individual, partnership
> or joint venture, the organization so designated and
> any executive officer, member of the board of
> trustees, directors or governors or stockholders
> thereof while acting within the scope of his duties as
> such[.]

In February 1989, National Technical Services, Inc., conducted a risk assessment survey of WILLIAMS HOUSE OF FINE FURNITURE on behalf of Southern Insurance.  As a result of that survey, recommendations were made to Southern Insurance concerning the need to have proper inspection of the fire extinguishers located on the premises and a need to increase the estimate of the building's actual value.  Nothing in the survey indicated that National Technical Services was made aware that

3

Williams owned additional properties or that he had other business interests.

In accord with Southern Insurance's practice, annual declarations were issued with renewal invoices in 1990 and 1991. Both declarations included a description of the nature of the business as an "APPLIANCE STORE." The 1991 declaration further contained a designation of business types which had not appeared on either of the prior declarations: "INDIVIDUAL," "PARTNERSHIP," "JOINT VENTURE," "CORPORATION," and "OTHER." An "X" was inserted in the space next to the "OTHER" on this declaration.

At the time Williams applied for Southern Insurance's businessowners policy, he and his wife, Ferna P. Williams, owned and rented at least seven houses to tenants. Between 1982 and 1994, one of these houses was rented to Rebecca Wright. Williams maintained a separate policy of insurance on this house with another insurance company. This policy insured against damage to or the loss of the structure, but provided no personal injury liability coverage to Williams or his wife. The billing address for this policy was not the address of the furniture store.

In 1988, Wright gave birth to a daughter, Lacy A. Wright. On August 30, 1993, Lacy was diagnosed as suffering from lead poisoning. In a motion for judgment filed in the trial court

4

against Williams and his wife, Wright alleged that her daughter's lead poisoning resulted from lead-based paint in the home she rented from them. Wright, individually and as next friend of her daughter, sought $2,350,000 in compensatory and punitive damages.

Subsequently, on December 17, 1999, Williams and his wife filed a motion for declaratory judgment in the trial court alleging that Southern Insurance was required to provide them with a defense and liability coverage for Wright's claims under its businessowners policy. Southern Insurance denied that its policy provided coverage for the claims asserted by Wright. Wright and her daughter were added as party plaintiffs to the declaratory judgment suit by order dated June 20, 2000.

On March 28, 2001, the trial court held a hearing at which Williams and the agent who had accepted the application for the businessowners policy were the only witnesses. The evidence received was in accord with the above-recited facts. During the course of the hearing, Williams objected to the introduction of the application for insurance and testimony concerning the application process on the ground that it was parol evidence outside the contract of insurance. The trial court indicated that it would allow Southern Insurance to "make [its] record" and that it would rule on the admissibility of the application and related testimony at the conclusion of the evidence.

5

Although the trial court never made an express ruling on the admissibility of the application evidence, it did direct specific questions to the agent concerning the contents of the application and initialed the application as an admitted exhibit.

In closing arguments, both parties asserted that the contract of insurance was unambiguous, but disputed which definition of "insured" under SECTION II of the policy should apply. Williams contended that because WILLIAMS HOUSE OF FINE FURNITURE was a fictitious entity and the application had indicated that the policy was for an individual, the comprehensive business liability coverage of the policy extended to any business conducted by Williams as a sole proprietor. Southern Insurance contended that the policy coverage was limited to the business conducted on the premises of WILLIAMS HOUSE OF FINE FURNITURE. Southern Insurance further contended that, even if the policy's coverage extended to any other business conducted by Williams as a sole proprietor, the rental house business was not a sole proprietorship because Williams and his wife jointly owned those houses.

In a final order dated April 16, 2001, the trial court ruled that Southern Insurance had a duty to defend and provide liability coverage to Williams for the damages claimed by Wright and her daughter. The trial court did not state an express

rationale for its judgment.  By order dated October 22, 2001, we awarded Southern Insurance this appeal.

DISCUSSION

It is well established that insurance contracts, like other contracts, generally are to be construed according to their terms and without reference to parol evidence.  However, resort to parol evidence is proper where a latent ambiguity exists in a particular insurance contract.  See, e.g., Connecticut Fire Ins. Co. v. W. H. Roberts Lumber Co., 119 Va. 479, 495, 89 S.E. 945, 948 (1916); Home Ins. Co. v. Gwathmey, 82 Va. 923, 926, 1 S.E. 209, 211 (1887).

The specific definitions of the "insured" in Southern Insurance's policy are not, when read in isolation, ambiguous.  However, a latent ambiguity exists in this policy because the named insured is not a legal entity and the individual insured is not named.  This ambiguity becomes apparent when the definitions of the "insured" are read in context with the complete contract of insurance, including the declarations which are specifically referred to in the definitions.  Indeed, the dispute between the parties is rooted in that latent ambiguity, which has existed in Southern Insurance's policy from its inception.

According to the initial declaration, the named insured is "WILLIAMS HOUSE OF FINE FURNITURE."  The parties concede that

7

there is no legal entity by that name. By the same token, Williams is not named in this declaration or the policy. The original declaration and first renewal declaration provide the additional information that the business of the insured is an "APPLIANCE STORE," but fail to designate a business type as contemplated in the policy definition of the "insured." Only in the second renewal declaration is there a specific designation of the business type as "OTHER." However, that definition of the insured clearly contemplates a legal organization with executive officers, a board of trustees, directors or governors, and stockholders, none of which WILLIAMS HOUSE OF FINE FURNITURE or Williams individually could have.

Thus, when the policy was first issued, a latent ambiguity existed because the applicable definition of "insured" under SECTION II was unclear. In the face of this latent ambiguity, we will resort to an examination of the parol evidence in order to determine the original intention of the parties to that policy.

The parol evidence clearly establishes that Williams sought and obtained insurance coverage for a furniture and appliance business operating out of a single premises. Williams never disclosed that he owned any other properties or conducted any other business. He never stated that he was applying for liability coverage for the operation of his rental housing

8

business.  Indeed, nothing in the record even suggests that such was his intention at the time he made the application.  Southern Insurance was entitled to issue its policy and assess the policy premiums in reliance upon Williams' representations.  See Niagara Fire Insurance Co. v. Elliott, 85 Va. 962, 963, 9 S.E. 694, 695 (1889) ("the insurer, in estimating the price at which he is willing to indemnify the insured, must have under his consideration the nature of the business, and the usual course and manner of conducting it").

Accordingly, we hold that Southern Insurance's duty to defend and afford coverage to Williams under its policy of insurance did not extend to any personal liability Williams might incur in his business of renting houses.  To hold otherwise would extend the benefits granted and broaden the risks imposed to a degree obviously never contemplated by the parties to the insurance contract.[2]

---

[2] Relying on Mollenauer v. Nationwide Mutual Insurance Co., 214 Va. 131, 198 S.E.2d 591 (1973)(per curiam), Williams contends that an individual is entitled to coverage under a businessowners policy for losses unrelated to and occurring off the premises of the main place of business for which the policy was issued.  Williams' reliance on Mollenauer is misplaced, as that case may be distinguished on multiple grounds.

In Mollenauer, the policy of insurance was issued to an individual trading under a fictitious name.  Id. at 131, 198 S.E.2d at 591.  Here, the declarations never identified Williams individually, but listed the name of the insured as "WILLIAMS HOUSE OF FINE FURNITURE" only.  Thus, unlike the facts of

9

CONCLUSION

For these reasons, we will reverse the judgment of the trial court that Southern Insurance had a duty to defend and provide liability coverage to Williams for the claims arising from his rental housing business and enter final judgment in favor of Southern Insurance.

<u>Reversed and final judgment</u>.

---

<u>Mollenauer</u>, here there was no express indication to the insurance company that it was Williams, rather than the business he was conducting at a specific location, who was being insured. Moreover, in <u>Mollenauer</u> the policy contained a specific provision applying to monetary losses "within the living quarters in the home of any messenger" while off the premises of the insured. It was in interpreting this provision of the contract of insurance that we determined that it must be construed against the insurer and in favor of finding liability. <u>Id.</u> at 133, 198 S.E.2d at 592. By contrast, the declarations of the policy at issue here clearly indicate that off-premises liability coverage was not included in the policy.

10