**BUILDERS MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**PARALLEL DESIGN & DEVEL- OPMENT LLC, and Ricky L. Edmonds, Defendants.**

**Civil Action No. 4:10cv68.**

United States District Court, E.D. Virginia, Newport News Division.

May 13, 2011.

Danny M. Howell, Esq., Andrew Biondi, Esq., Courtney S. Schorr, Esq., Jeffrey H. Geiger, Esq., Michael T. Marr, Esq., Mikhael D. Charnoff, Esq., for Plaintiff.

Richard G. Collins, Jr., for Defendant Parallel Design & Development LLC.

Richard J. Serpe, Esq., Frederick S. Longer, Esq., Jeffrey A. Breit, Esq., John W. Drescher, Esq., Michael F. Imprevento, Esq., for Defendant Ricky L. Edmonds.

### OPINION AND ORDER

MARK S. DAVIS, District Judge.

On December 17, 2009, Plaintiff, Builders Mutual Insurance Company ("Builders Mutual"), filed a Complaint in the Richmond Division of this Court, seeking a declaratory judgment on three separate issues. In Count I, Builders Mutual seeks a declaration that it has no obligation under the applicable insurance contracts to defend or indemnify Parallel Design and Development LLC ("Parallel"), with respect to a lawsuit filed in state court against Parallel by Defendant Ricky L. Edmonds ("Edmonds"), because such coverage is excluded by the insurance contract's Total Pollution Exclusion. In Count II, Builders Mutual seeks a specific declaration that it has no obligation to defend or indemnify Parallel for any medical monitoring sought by Edmonds in his underlying state lawsuit because such coverage is also excluded by the insurance contract's Total Pollution Exclusion. In Count III, Builders Mutual seeks a declaration that the "Your Work" exclusion in the applicable insurance policy also excludes coverage for the claims alleged in the Edmonds state lawsuit. The case was transferred to this Division on June 1, 2010 and Builders Mutual filed the motion for summary judgment currently pending before the Court. After considering the Complaint, the briefs submitted by the parties, and the arguments made by counsel at the hearing on this motion, for the reasons set forth below, the Court **DENIES IN PART** Builders Mutual's motion for summary judgment and therefore concludes that Builders Mutual does have a duty to defend Parallel in Edmonds' underlying state court action. However, the Court **HOLDS IN ABEYANCE** Builders Mutual's motion on the issue of indemnity until the underlying action is resolved.

### I. Facts and Procedural History

#### A. Facts

Edmonds owns a home located on Holly Street in Richmond, Virginia. Compl. Ex. 2, at ¶ 1. This home was built by both The Overlook, L.L.C., which is not a party to this action, and Parallel. *Id.* Allegedly, when constructing this home, Parallel used "defective drywall" imported from China. *Id.* On September 3, 2009, Edmonds filed suit in the Circuit

Court for the City of Norfolk against Parallel and other defendants not relevant to this action. In that suit, Edmonds claims that the defective drywall used in his home "is inherently defective because it emits various sulfide gases and/or other toxic chemicals through 'off-gassing' that create noxious odors, and cause damage and corrosion ... to the structural, mechanical and plumbing systems of the Plaintiff's home...." *Id.* at ¶ 11. Further, according to Edmonds' complaint, the "compounds emitted by the drywall at issue are also capable of, among other things, harming the health of individuals subjected to prolonged exposure." *Id.* at ¶ 12. The "chemical compounds cause and have caused dangerous health consequences including, among other things, allergic reactions, respiratory afflictions, sinus and bronchial problems requiring medical attention, including headaches suffered by the Plaintiff." *Id.* Additionally, as to health consequences, the complaint alleges that "some of the compounds being emitted from Defendants' defective drywall are very hazardous, some latently affecting the central nervous system and basic oxygenation on a cellular level." *Id.* at ¶ 58. Premised on these underlying allegations, Edmonds asserts twelve counts against Parallel in his state court action.

Although Builders Mutual is not a party to the underlying state lawsuit, it has interests intertwined in the action because it has previously issued, to the Court's knowledge, at least three insurance contracts to Parallel. As a result, Builders Mutual is providing Parallel with a defense in state court against Edmonds' claims, subject to a reservation of rights. These insurance policies provide Parallel with coverage for the periods of June 2006 to June 2007, June 2007 to June 2008, and June 2008 to June 2009. Although there are three potentially applicable insurance policies, Builders Mutual has submitted evidence stating that "[b]ecause the Certificate of Occupancy for Edmonds' property ... was issued on July 25, 2006," the policy spanning from June 2006 to June 2007 ("Applicable Policy") "is the applicable policy with regard to the Edmonds' claim." Warbington Aff., at ¶ 3. Edmonds agrees that the June 2006 to June 2007 policy is controlling.

According to the Applicable Policy, Builders Mutual "will pay those sums that the insured [Parallel] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Compl. Ex. 1, at p. 38 of 67. The insurance applies only if the "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory." *Id.* However, the Applicable Policy also includes several relevant exclusions. In particular, Builders Mutual argues that the "Total Pollution Exclusion" and the "Your Work" exclusions are applicable here and bar coverage for the Edmonds claims.

### 1. Total Pollution Exclusion

According to the Applicable Policy's Total Pollution Exclusion, the "insurance does not apply to:"

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of *"pollutants"* at any time.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of *"pollutants"*....

*Id.* at p. 37 of 67 (emphasis added). This Total Pollution Exclusion is found in an endorsement included in the Applicable Policy.

Insurance policies like the Applicable Policy are generally composed of a collection of basic form contracts, which are then supplemented with additional endorsements that either add terms to or modify terms in those basic form contracts. One such form contract included in the Applicable Policy is the Commercial General Liability coverage form. This Commercial General Liability coverage form contained a Pollution Exclusion, referred to as "Exclusion (f)," which included a definition of the word "pollutants." However, the separate Total Pollution Exclusion endorsement modified portions of this Commercial General Liability policy, specifically, Exclusion (f). Of critical importance, the parties do not dispute that the Total Pollution Exclusion endorsement replaced Exclusion (f) in its entirety. While Exclusion (f) defined the term "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste," *id.* at p. 39 of 67, the Total Pollution Exclusion, does not contain a definition of "pollutants." As a result, the term "pollutants" in the Total Pollution Exclusion is left undefined in the Applicable Policy.[1]

### 2. *"Your Work" Exclusion*

The Policy also includes an exclusion entitled "Damage to Work Performed by Subcontractors on Your Behalf." *Id.* at p. 14 of 67. This exclusion, which replaces exclusion "1" in the basic Commercial General Liability policy, states that the "insurance does not apply to ... 'property damage' to 'your work' arising out of it or any part of it and included in the products-completed operations hazard." *Id.* While there are several different components to this exclusion that involve complex definitions, the most significant aspect of the "Your Work" exclusion for purposes of this Opinion and Order is that it only has a bearing on coverage for "property damage." Since that aspect of the exclusion proves dispositive in the Court's "Your Work" analysis, the Court need not delve into further detail with respect to this exclusion.

### B. *Procedural History*

Builders Mutual's Complaint seeks a declaratory judgment on several issues. In Count I, the Complaint seeks a declaratory judgment stating that Builders Mutual has no obligation to defend or indemnify Parallel, with respect to the Edmonds suit, because Edmonds' claims are excluded under the Total Pollution Exclusion. Compl. ¶¶ 28–31. In Count II, Builders Mutual seeks a declaration that the portion of the Total Pollution Exclusion excluding coverage for any loss arising out of any "[r]equest, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of 'pollutants' " relieves Builders Mutual of any obligation to defend or indemnify Parallel with respect to Edmonds' requests for

---

1. The term "pollutants" *is* defined in the two subsequent policies (2007–2008 and 2008–2009), with the definition matching the one in Exclusion (f) of the 2006–2007 Applicable Policy's Commercial General Liability coverage form. Unlike the 2006–2007 policy, the subsequent policies define the term "pollutants" in the "definitions" section of the Commercial General Liability Coverage form. Because the term is found in the "definitions" section, and not Exclusion (f), the Total Pollution Exclusions' replacement of Exclusion (f) in the subsequent policies does not remove the definition from the policy. As a result, even after the Total Pollution Exclusion endorsement was added to the subsequent policies, the term remains defined.

"monitoring." *Id.* at ¶¶ 32–36. Lastly, in Count III, Builders Mutual seeks a declaration that the "Your Work" exclusion also excludes from coverage any claim made in Edmonds' underlying Complaint. *Id.* at ¶¶ 37–40.

After the Complaint was filed, the case was transferred to this Division of the Court. Docket No. 27. Subsequently Builders Mutual filed the motion for summary judgment addressed in this Opinion and Order. Docket No. 54. Builders Mutual argues that the Total Pollution Exclusion unambiguously excludes coverage for the claims in Edmonds' underlying lawsuit, despite the fact that the term "pollutants" is undefined in the Applicable Policy. Further, Builders Mutual argues that coverage is also excluded under the "Your Work" exclusion.

Edmonds [2] presents an alternate view of the meaning of the terms in the Applicable Policy. According to Edmonds, the term "pollutants" can be interpreted by reasonable people in different ways. For example, Edmonds contends that the term can be reasonably read as only applying to traditional environmental pollutants, and therefore it would not apply to substances that cause damage in a localized, indoor setting, like the defective drywall in the present case. Further, Edmonds argues that the "Your Work" exclusion does not bar coverage here because determining its applicability requires analyzing materials outside of Edmonds' underlying complaint and the Applicable Policy. Each of these arguments are addressed in turn below.

## II. Standard of Review

### A. Applicable Law

■ This case was brought before this Court under diversity of citizenship jurisdiction. Compl. ¶ 4. In suits filed in federal court under diversity jurisdiction, questions of procedural law are governed by federal law, e.g., *Gasperini v. Ctr. for Humanities, Inc.,* 518 U.S. 415, 427, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996), whereas questions of substantive law are governed by the law of the forum state, e.g., *Salve Regina Coll. v. Russell,* 499 U.S. 225, 226, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991) (stating that this rule applies "absent a federal statutory or constitutional directive to the contrary"). *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Since Virginia is the forum state, under Virginia law, " 'the law of the place where an insurance contract is written and delivered controls issues as to its coverage.' " *Firemen's Ins. Co. v. Kline & Son Cement Repair, Inc.,* 474 F.Supp.2d 779, 788 (E.D.Va.2007) (quoting *Buchanan v. Doe,* 246 Va. 67, 431 S.E.2d 289 (1993)). While the parties do not specifically state the location where the Applicable Policy was written and delivered, Parallel is a Virginia limited liability company, Compl. Ex. 2, at ¶ 5, the applicable insurance agent is a Virginia corporation, Compl. Ex. 1, at p. 7 of 67, and both parties assert in their briefs that Virginia law applies. As a result, such a state of facts is reasonable to infer. Therefore, while this Court must apply the federal standard for summary judgment, *Gen. Accident Fire and Life Assurance Corp., Ltd. v. Akzona, Inc.,* 622 F.2d 90, 93 n. 5 (4th Cir.1980), the underlying insurance contract issue must be analyzed under Virginia law. *See, e.g., Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.,* 407 F.3d 631, 635–36 (4th Cir.2005).

---

2. Parallel has not filed a memorandum in opposition to the motion for summary judgment. By Order of the Court, pursuant to an agreement among the parties, "Parallel is not required to actively participate in the case pending further order of the Court." Docket No. 31, at 5.

## B. Summary Judgment Standard

"Summary judgment is particularly well-suited for resolution of insurance coverage disputes because the construction of insurance contracts is a legal question." *Mount Vernon Fire Ins. Co. v. Adamson*, Case No. 3:09cv817, 2010 WL 3937336, at *1–2, 2010 U.S. Dist. LEXIS 106758, at *4 (E.D.Va. Sept. 15, 2010) (citations omitted). According to Rule 56 of the Federal Rules of Civil Procedure, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed.R.Civ.P. 56(a). The Rule goes on to state that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* The mere existence of some alleged factual dispute between the parties "will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Furthermore, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be considered by a court in its determination. *Id.* at 248, 106 S.Ct. 2505.

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute of fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). At that point, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. In doing so, the judge must construe the facts in the light most favorable to the non-moving party, and may not make credibility determinations or weigh the evidence. *Id.* at 255, 106 S.Ct. 2505; *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007). However, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted). While the Court must observe the above-mentioned federal procedure in assessing motions for summary judgment, it must apply the substantive law of Virginia in the present case.

## C. Virginia Law of Insurance Contracts

### 1. Duty to Defend and Duty to Indemnify

Since Builders Mutual has requested declaratory judgments on the issues of both its "duty to defend" and "duty to indemnify" Parallel, the Court will briefly address the rules of decision with respect to those two duties, before addressing general principles of Virginia insurance contract interpretation. "Under Virginia law, an insurer's duty to defend arises 'whenever the complaint against the insured alleges facts and circumstances, some of which, if proved, would fall within the risk covered by the policy.'" *Penn–America Ins. Co. v. Coffey*, 368 F.3d 409, 413 (4th Cir.2004) (quoting *Brenner v. Lawyers Title Ins. Corp.*, 240 Va. 185, 397 S.E.2d 100 (1990)). Duty to defend questions do "not require the district court to resolve factual questions at all. It need only decide such coverage by comparing what [the state court Plaintiff] *has alleged* in the state court action with the language of the [provider's] insurance policy." *Id.* "[T]here is no duty to defend 'if it appears clearly that the insurer would not be liable

under its contract for any judgment *based upon the allegations.'* " *Id.* (quoting *Brenner,* 240 Va. at 189, 397 S.E.2d 100). Since courts must only compare the allegations contained within the four corners of the complaint to the terms contained within the four corners of the insurance contract, this standard of review for duties to defend is often referred to as the "Eight Corners Rule." *See CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.,* 566 F.3d 150, 155 (4th Cir.2009); *Capitol Envtl. Servs., Inc. v. N. River Ins. Co.,* 536 F.Supp.2d 633, 640 n. 14 (E.D.Va.2008) (explaining that the Eight Corners Rule is a combination of the Exclusive Pleading Rule and the Potentiality Rule).

The duty to indemnify, on the other hand, is different than the duty to defend. It is a narrower obligation. *Minn. Lawyers Mut. Ins. Co. v. Antonelli, Terry, Stout & Kraus, LLP,* 355 Fed. Appx. 698, 704 (4th Cir.2009) (unpublished). "While the duty to defend is based on the allegations in the underlying complaint, the duty to indemnify relies on litigated facts." *CACI Int'l, Inc.,* 566 F.3d at 155. " 'An insurer's duty to defend is triggered if there is any possibility that a judgment against the insured will be covered under the insurance policy[,]' " *id.* (quoting *Bohreer v. Erie Ins. Grp.,* 475 F.Supp.2d 578, 584 (E.D.Va.2007)), whereas "[t]he duty to indemnify ... refers to an insurer's responsibility to pay a monetary award when its insured has become liable for a covered claim." *Perdue Farms, Inc. v. Travelers Cas. & Sur. Co. of Am.,* 448 F.3d 252, 257–58 (4th Cir.2006).

In order to make this indemnification determination, where there is an underlying state suit, the court considering the duty to indemnify question must generally analyze the ultimate findings of fact in the underlying state suit once it is concluded, rather than making its own evidentiary findings in the first instance. *Pa. Nat'l*

*Mut. Cas. Ins. Co. v. Block Roofing Corp.,* 754 F.Supp.2d 819, 827 (E.D.Va.2010) (applying Virginia law and concluding that a duty to indemnify decision is only made "after the state court has made its decision"); *Capitol Envtl. Servs., Inc.,* 536 F.Supp.2d at 645 (applying Virginia law and explaining that a duty to indemnify determination is made based on facts actually discovered or proven at an underlying trial); *see also Perdue Farms, Inc. v. Nat'l Union Fire Ins. Co.,* No. 04–1176, —— Fed.Appx. ——, —— – ——, 2005 WL 1316955, *5–8, 2005 U.S.App. LEXIS 10136, *16–23 (4th Cir.2005) (applying Florida law and looking to jury verdict and trial transcript in determining litigated facts to apply to policy language). After analyzing those state court findings, the court considering the duty to indemnify question must apply the applicable jurisdiction's duty to indemnify law and reach a conclusion on whether an obligation to indemnify exists. With these principles of Virginia insurance law in mind, the Court must briefly discuss general principles of Virginia insurance contract interpretation.

### 2. *General Principles of Virginia Insurance Contract Interpretation*

"Courts interpret insurance policies, like other contracts, in accordance with the intention of the parties gleaned from the words they have used in the document." *Seals v. Erie Ins. Exch.,* 277 Va. 558, 562, 674 S.E.2d 860 (2009) (quoting *Floyd v. N. Neck Ins. Co.,* 245 Va. 153, 158, 427 S.E.2d 193 (1993)). Therefore, "a court must adhere to the terms of a contract of insurance as written, if they are plain and clear and not in violation of law or inconsistent with public policy." *Blue Cross & Blue Shield v. Keller,* 248 Va. 618, 626, 450 S.E.2d 136 (1994). The Virginia courts "interpret the unambiguous terms of a contract according to their plain meaning." *Uniwest Constr., Inc. v. Amtech Elevator Servs.,* 280 Va. 428, 444, 699

S.E.2d 223 (2010). It is not the function of the Court to " 'make a new contract for the parties different from that plainly intended and thus create a liability not assumed by the insurer.' " *Keller*, 248 Va. at 626, 450 S.E.2d 136 (quoting *Pilot Life Ins. Co. v. Crosswhite*, 206 Va. 558, 561, 145 S.E.2d 143 (1965)).

 However, "[b]ecause insurance companies typically draft their policies without the input of the insured, the companies bear the burden of making their contracts clear." *Res. Bankshares Corp.*, 407 F.3d at 636. "Accordingly, if an ambiguity exists, it must be construed against the insurer." *Id.* "Where two constructions are equally possible, that most favorable to the insured will be adopted. Language in a policy purporting to exclude certain events from coverage will be construed most strongly against the insurer." *Seals*, 277 Va. at 562, 674 S.E.2d 860 (quoting *St. Paul Fire & Marine Ins. Co. v. S.L. Nusbaum & Co., Inc.*, 227 Va. 407, 411, 316 S.E.2d 734 (1984)). "[D]oubtful, ambiguous language in an insurance policy will be given an interpretation which grants coverage, rather than one which withholds it." *Granite State Ins. Co. v. Bottoms*, 243 Va. 228, 234, 415 S.E.2d 131 (1992) (quoting *Am. Reliance Ins. Co. v. Mitchell*, 238 Va. 543, 547, 385 S.E.2d 583 (1989)).

 "An ambiguity, if one exists, must be found on the face of the policy." *Id.* "[L]anguage is ambiguous [3] when it

may be understood in more than one way or when it refers to two or more things at the same time." *Id.* "As with other contracts, when interpreting a policy courts must not strain to find ambiguities." *Res. Bankshares Corp.*, 407 F.3d at 636. "[C]ontractual provisions are not ambiguous merely because the parties disagree about their meaning." *Nextel WIP Lease Corp. v. Saunders*, 276 Va. 509, 516, 666 S.E.2d 317 (2008) (citing *Dominion Sav. Bank, FSB v. Costello*, 257 Va. 413, 416, 512 S.E.2d 564 (1999)).

 When ultimately determining whether coverage exists, courts impose separate burdens on each party. "A policyholder bears the burden of proving that the policyholder's conduct is covered by the policy." *Res. Bankshares Corp.*, 407 F.3d at 636. However, if the policyholder carries that burden, "the insurer bears the burden of proving that an exclusion applies." *Bohreer*, 475 F.Supp.2d at 585. Cognizant of these principles of law, the Court will address the motion for summary judgment below.

### III. Discussion

Since the parties do not dispute the fact that damage from defective drywall falls within the Applicable Policy's general coverage provisions, but rather only argue over whether several relevant exclusions bar coverage if the policy was to otherwise apply, this Court will only address the issues regarding the exclusions.[4] As a re-

---

3. The Court notes that ambiguity can be found in two different forms—patent ambiguity and latent ambiguity. *See SunTrust Mortg., Inc. v. AIG United Guar. Corp.*, No. 3:09cv529, 784 F.Supp.2d 585, 591-93, 2011 WL 1597530, at *4, 2011 U.S. Dist. LEXIS 45105, at *18 (E.D.Va. Apr. 26, 2011). The relevance of this differentiation is discussed below.

4. Builders Mutual briefly argues in its memorandum that Edmonds' claims for medical monitoring are not covered by the Applicable

Policy, regardless of any exclusion. However, in light of the Court's decision below, whether or not a narrow portion of Edmonds' complaint falls within the policy's coverage provisions ultimately has no bearing on whether Builders Mutual has a duty to *defend* Parallel in the entire state court action. That is because the duty to defend exists if *any* of the claims pled would fall within the policy's provisions—regardless of whether a select few are excluded from coverage.

sult, the Court begins its analysis with the Total Pollution Exclusion.

### A. The Total Pollution Exclusion

■ In analyzing the specific language in the Total Pollution Exclusion, the Court would typically analyze the meaning of the clause by examining the words contained within it in the order in which they appear. Therefore, the Court would ordinarily determine, in the following order, whether Edmonds' complaint has alleged (1) "bodily injury" or "property damage," which would (2) not have occurred but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape, of (3) "pollutants" at any time. However, since the lion's share of the parties' arguments revolve around whether the term "pollutants" is ambiguous in the context of the Applicable Policy, the Court will address that issue at the outset. If the Court concludes that the term is unambiguous in this context, it will then address the first two issues mentioned above regarding the applicability of the Total Pollution Exclusion to the present case.

### 1. Pollutants

Edmonds argues that his underlying state court complaint does not allege damage from a substance that can unambiguously be classified as a pollutant because a reasonable person could conclude that "pollutants" is limited to substances that cause "traditional pollution events that impact the environment" and therefore does not include damage caused by gases which are released in a home, create damage indoors, and originate from materials intentionally brought into that home. See Mem. Opp'n Summ. J. 2. Builders Mutual counters that such an interpretation "requires the Court to read into the Exclusion language nowhere found therein...." Mem. Supp. Summ. J. 10. As a result, according to Builders Mutual, "Edmonds simply cannot seriously dispute that the gases are pollutants" and such arguments "belie common sense." Reply Mem. Supp. Summ. J. 6, 3.

"The word 'pollutant' has received a great deal of scrutiny by the courts" and has been the subject of intense litigation. *Firemen's Ins. Co.*, 474 F.Supp.2d at 789. According to the court in *Firemen's Insurance Co.*, "[n]umerous courts have held that a pollution exclusion bars coverage for all injuries caused by the release of pollutants, even where the pollutant is dispersed into a confined or indoor area." *Id.* at 792 (collecting cases) (citation omitted). However, "other courts have held that the exclusion does not apply if the facts show that the discharge, dispersal, release or escape was a localized toxic accident occurring within the vicinity of the pollutant's intended use." *Id.* at 793. (collecting cases) (citation omitted).

While the Court is cognizant of the positions of courts in other jurisdictions, there are several reasons why many of those decisions lend little assistance to the Court in this case when determining whether the term "pollutants" is ambiguous. First, in the vast majority of the cases where courts are tasked with determining the meaning of a Pollution Exclusion, the term "pollutants" is defined. Here, the Applicable Policy contains no such definition. Second, this Court's principal task is to try "to determine how the highest state court would interpret the law," and in doing so, it "should not create or expand that State's public policy." *Wade v. Danek Med., Inc.*, 182 F.3d 281, 286 (4th Cir.1999) (quoting *Talkington v. Atria Reclamelucifers Fabrieken BV*, 152 F.3d 254, 260 (4th Cir. 1998)). *See St. Paul Fire & Marine Ins. Co. v. Jacobson*, 48 F.3d 778, 783 (4th Cir.1995) ("[T]he federal courts in diversity cases, whose function it is to ascertain and apply the law of a State as it exists, should not create or expand that State's

public policy."). Therefore, the Court's principal focus must be to follow the guidance of the Supreme Court of Virginia if it has spoken on the issue,[5] rather than looking to the decisions of courts in other jurisdictions.

In *City of Chesapeake v. States Self–Insurers Risk Retention Grp., Inc.*, 271 Va. 574, 628 S.E.2d 539 (2006), the Supreme Court of Virginia was faced with a certified question, asking whether claims by women who alleged that they all suffered miscarriages resulting from exposure to "THMs" in the City of Chesapeake's water supply were excluded from coverage by the Pollution Exclusion in the relevant insurance policy. *Id.* at 576, 628 S.E.2d 539. However, in that case, the relevant policy defined the term "pollutants." *See id.* at 577–78, 628 S.E.2d 539. Utilizing that definition, which defined "pollutants" as a "contaminant," the court concluded that THMs were contaminants and therefore the Pollution Exclusion was applicable to THMs in the water supply. *Id.* at 578, 628 S.E.2d 539. Thus, the insurance company had no obligation to cover the damages. *Id.* at 578–79, 628 S.E.2d 539. While *City of Chesapeake* is of only marginal value in determining whether the term "pollutants" is ambiguous in this case—because the facts of the cases differ and the term "pollutants" is undefined in the case presently before the Court—the Supreme Court of Virginia did provide guidance as to the proper legal analysis this Court should follow in analyzing whether gases, produced indoors, are unambiguously classified as "pollutants." The court stated that it was unnecessary to evaluate "how other jurisdictions have resolved similar insurance contract disputes" "because the law of this Commonwealth and the plain language of the insurance policy provide the answer to the certified question." *Id.* at 579, 628 S.E.2d 539.

In heeding *City of Chesapeake's* direction, this Court would ordinarily look to the decisions of Virginia courts, and other courts applying Virginia law, to examine their stance on the issue of whether similar Pollution Exclusions are ambiguous. However, as mentioned above, relying on the outcome of such cases here is of limited utility because in the typical Pollution Exclusion case the word "pollutants" is defined. *See, e.g.*, *Firemen's Ins. Co.*, 474 F.Supp.2d at 783 (conducting a thorough analysis on the question of whether a Pollution Exclusion is limited to traditional environmental pollution where the exclusion defined "pollutant" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."). When such a definition is present, it provides the context through which the Court can assess whether the term is ambiguous. However, when no definition is present, "[a] contractual terra . . . is construed ac-

5. In a similar case before this Court, which also involves the application of a Pollution Exclusion to defective drywall (albeit where the term "pollutants" is *defined*), this Court recently entered an Order of Certification to the Supreme Court of Virginia. *Nationwide Mut. Ins. Co. v. Overlook, LLC*, 4:10cv69, Docket No. 121. In that Order of Certification, the Court posed the following question to the Supreme Court:

In the pollution exclusion clause of the relevant insurance contracts, is the definition of "pollutant," as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste," ambiguous, 1) because it could be interpreted to apply only to traditional environmental pollutants, 2) because it is so broad that it could cover virtually any substance and potentially lead to absurd results, or 3) because it is substantively unreasonable?

By Order of April 22, 2011, the Supreme Court of Virginia "declined to accept this certified question of law." *Nationwide*, 4:10cv69; Docket No. 129.

cording to its usual, ordinary, and popular meaning." *Palmer & Palmer Co., LLC v. Waterfront Marine Constr., Inc.,* 276 Va. 285, 290, 662 S.E.2d 77 (2008); *Schwartz & Schwartz of Va., LLC v. Certain Underwriters at Lloyd's,* 677 F.Supp.2d 890, 905 (W.D.Va.2009) (*citing Lower Chesapeake Assocs. v. Valley Forge Ins. Co.,* 260 Va. 77, 86, 532 S.E.2d 325 (2000)). Since the cases that involve a definition of the word "pollutant" need not explore the term's usual, ordinary, and popular meaning, they are of little assistance in the analysis required in the present case. As a result, this Court must look to alternate sources to assess whether the term "pollutants" is ambiguous in the present context.

As to these alternate sources, the Court will first look to dictionary definitions to determine the manner in which "pollutants" is ordinarily used in everyday parlance—thus informing the Court of reasonable uses of the term when it is undefined in a contract. *Schwartz & Schwartz of Va., LLC,* 677 F.Supp.2d at 905. Then, with those uses as a guide, the Court will examine the Applicable Policy as a whole in order to whittle those potential uses down to only those that would be reasonable in the context of the entire policy. *Id.* (*citing CACI Int'l, Inc.,* 566 F.3d at 158) (explaining that in determining the plain and ordinary meaning of an undefined policy term, courts will first look to dictionary definitions, "[a]nd yet the ordinary and accepted meaning of an undefined term cannot be divined in isolation, but instead is informed by the surrounding context of the insurance policy."). If, after this analysis, the Court concludes that there are several reasonable definitions of the term that could apply, the policy is ambiguous as a matter of law. If not, the policy is unambiguous and the Court will then assess whether the damage alleged in Edmonds' complaint falls within the Total Pollution Exclusion.

### a. Alternate Sources

### i. Dictionary Definitions

In order to determine the usual, ordinary, and popular meaning of the term "pollutant," the Court will first look to reputable dictionaries for the manner or manners in which the term "pollutants" is ordinarily used. *See Centennial Broad., LLC v. Burns,* Case No. 6:06cv00006, 2006 WL 2850640, at *11, 2006 U.S. Dist. LEXIS 70974, at *34 (W.D.Va. Sept. 29, 2006) ("Its ordinary and plain meaning can be gleaned by resort to dictionary definitions and common usage."). According to Merriam–Webster's dictionary, "pollutant" is defined as "something that pollutes," which the dictionary exemplifies with the phrase "filtered the *pollutants* out of the water." Merriam–Webster Online Dictionary (2011). "Pollution," in turn, is defined as "the action of polluting especially by environmental contamination with man-made waste." *Id.* The phrases that exemplify that term are "industrial practices that have caused *pollution* of the air and water," "[t]he tests showed high levels of *pollution* in the water," and "[t]he fish are dying of *pollution.*" *Id.* In analyzing these definitions, one of the most significant commonalities among them all is that they appear to carry with them a traditional outdoor environmental connotation.

This gloss is also borne out in other dictionary definitions of the term. For example, Black's Law Dictionary defines the term "pollute" as "[t]o corrupt or defile; esp., to contaminate the soil, air, water with noxious substances," Black's Law Dictionary 1277 (9th ed. 2009), and the Oxford English Dictionary defines "pollutant" as "[a] polluting agent; *esp.* a noxious or poisonous substance which pollutes the environment." Oxford English Dictionary Online (3d ed. 2006, online version updated Mar. 2011). While it is certainly plausible that the term could be used in a

broader fashion to apply to all environmental harms, both traditional and non-traditional, *see, e.g.,* Webster's New Collegiate Dictionary 884 (1980) (noting that one definition of "pollute" is "to make physically impure or unclean"), whether such a broad reading is intended cannot be gleaned purely by reference to the definitions discussed above. Therefore, since the ordinary popular meaning of the term "pollutants" can be understood in more than one way, i.e. only traditional environmental harms, *or* non-traditional and traditional environmental harms, the Court must determine whether this broader reading of the term "pollutants" is the meaning unambiguously conveyed by the language and context of the Applicable Policy.

### ii. Definition in the Context of the Policy as a Whole

As explained above, while the Court has noted that the term "pollutants" often carries with it a connotation of traditional environmental harm, in determining whether such a term is ambiguous, a court should look to the surrounding context of the policy because the Court cannot determine if a term is subject to multiple reasonable interpretations in a vacuum. *Res. Bankshares Corp.,* 407 F.3d at 636 (citations omitted) ("As with other contracts, when interpreting a policy courts must not strain to find ambiguities, or examine certain specific words or provisions in a vacuum, apart from the policy as a whole."); *Schwartz & Schwartz of Va., LLC,* 677 F.Supp.2d at 905. A court must determine if the policy is ambiguous with respect to the specific factual situation under which coverage is asserted and in the context of the insurance policy as a whole. *See CACI Int'l, Inc.,* 566 F.3d at 158 (determining an undefined term's meaning by "considering its meaning in the context of the policies as a whole."). Therefore, the Court must assess whether there are provisions in the Applicable Policy indicating that "pollutants" was meant to have a broad meaning

covering both traditional *and* non-traditional environmental harm meaning that an interpretation limiting "pollutants" to traditional environmental harm is unreasonable in the context of this insurance policy as a whole.

At best, language in the policy is conflicting as to the intended reach of the term "pollutants." As evidence that the Pollution Exclusion was intended to apply to both traditional environmental pollution and damage occurring indoors (non-traditional environmental pollution), Builders Mutual highlights endorsement CG 26 47 05 98 (Exception for Building Heating Equipment). This endorsement states that subparagraph (1)(a) of Exclusion (f), which, of course, no longer exists in light of the Total Pollution Exclusion, "does not apply to 'bodily injury' if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building." Compl. Ex. 1, at p. 51 of 67. According to Builders Mutual, if the exclusion was not intended to apply to indoor harm, the exception would be unnecessary. Although the heating equipment exception specifically says that it modifies Exclusion (f), which is no longer part of the policy, and thus this endorsement is of questionable applicability, Builders Mutual's point is certainly one that supports its position. However, other endorsements to the policy militate in the opposite direction.

In addition to the Total Pollution Exclusion, the Applicable Policy contains exclusions such as an "Absolute Asbestos Exclusion," a "Hazardous Properties of Lead Exclusion," and a "Silica or Silica–Related Dust Exclusion." If the definition of "pollutant" in the Applicable Policy were to sweep as broadly as Builders Mutual contends, these additional exclusions could arguably be redundant because damage caused by the substances that these exclu-

sions seek to exclude from coverage would ostensibly already fall within the Total Pollution Exclusion. While the Court recognizes that these additional exclusions may represent an effort on the part of Builders Mutual to make doubly sure that damages caused by those substances are excluded, a so called "Belt and Suspenders" approach,[6] when the term "pollutants" is undefined as it is here, those additional exclusions do not provide clarity to the meaning of the term in the context of the Total Pollution Exclusion. Moreover, the Court notes that the term "pollutants" *is* defined broadly in an alternate provision of the Applicable Policy—the Contractor Tools and Equipment Coverage Form.[7] The fact that this section defines the term expansively, while the Total Pollution Exclusion does not define the term at all, also raises questions about the parties' intended reach of the Total Pollution Exclusion.[8] Therefore, the language and context of the policy suggest that the term "pollutants," as it is used in the Total Pollution Exclusion, could be understood in more than one way, i.e. to mean only traditional environmental pollution, *or* to mean traditional and non-traditional environmental pollution.

Having determined by reference to dictionary definitions that the meaning of the undefined policy term "pollutants" can be understood in more than one way, and having determined that the language and context of the Applicable Policy fails to clarify this ambiguity, the reader is left asking what the term means. While the term may have more than one reasonable meaning, it is not for the Court to decide which meaning is "correct," provided all meanings are reasonable. Therefore, as a result of the analysis above, the Court concludes, as an initial matter, that the term "pollutants" is ambiguous. However, before conclusively determining that the term is ambiguous in this context, the Court must address several countervailing considerations urged by Builders Mutual.

### b. Countervailing Considerations

### i. Definition in Subsequent Policies

The Court recognizes that the term "pollutant," while not defined in the Applicable Policy, is defined in subsequent insurance policies issued to Parallel. Since those insurance policies are extrinsic to the Applicable Policy, the definition contained therein is considered parol evidence if the Court were to use it to clarify the meaning of the term "pollutant" in the Applicable Policy. *See Birmingham Fire Ins. Co. v. Am. Nat'l Fire Ins. Co.,* 947 S.W.2d 592, 602–03 (Tex.App.1997). While a consideration of parol evidence is permissible in certain circumstances, use of such evidence is not proper here.

The permissibility of considering parol evidence to clarify an ambiguity in an insurance contract turns on the type of am-

---

6. "The term 'belt and suspenders' is sometimes used to describe the common tendency of lawyers to use redundant terms to make sure that every possibility is covered. 'That some wear a belt and suspenders does not prove the inadequacy of either to hold up the pants, but only the cautious nature of the person wearing the pants.'" *United States v. Carona,* 630 F.3d 917, 927 (9th Cir.2011) (quoting *Ortega–Gamboa v. Holder,* 388 Fed. Appx. 580, 582 (9th Cir.2010) (unpublished)).

7. That form defines "pollutants" almost identically to the original Exclusion (f).

8. The Court recognizes that the absence of a definition in the Total Pollution Exclusion or the Commercial General Liability coverage form may have been an inadvertent omission on the part of Builders Mutual and thus not a product of considered judgment. However, "it is incumbent upon the insurer to employ exclusionary language that is clear and unambiguous." *Granite State Ins. Co.,* 243 Va. at 233, 415 S.E.2d 131 (quoting *Am. Reliance Ins. Co.,* 238 Va. at 547, 385 S.E.2d 583).

biguity that the Court seeks to clarify. When evaluating the propriety of considering parol evidence, "Virginia courts have consistently distinguished between patent ambiguity—ambiguity apparent on the face of the instrument itself—and latent ambiguity—ambiguity that manifests only upon consideration of extrinsic evidence." *SunTrust Mortg., Inc. v. AIG United Guar. Corp.*, No. 3:09CV529, 784 F.Supp.2d 585, 592-93, 2011 WL 1597530, at *4, 2011 U.S. Dist. LEXIS 45105, at *18 (E.D.Va. Apr. 26, 2011). "Normally, an ambiguity in a contact [sic] is 'patent,' that is, the language of the contract itself reveals that it can be interpreted in more than one way." *Va. Elec. & Power Co. v. Norfolk S. Ry. Co.*, 278 Va. 444, 460, 683 S.E.2d 517 (2009) (quoting *Galloway Corp. v. S.B. Ballard Constr. Co.*, 250 Va. 493, 503, 464 S.E.2d 349 (1995)). For example, a patent ambiguity would exist if a contract were to have a price written as "$200 (two hundred forty-five)." On the other hand, "[a] latent ambiguity exists where language 'while appearing perfectly clear at the time the contract [ ] [is] formed, because of subsequently discovered or developed facts, may reasonably be interpreted in either of two ways.'" *Id.* That is, a latent ambiguity is one where the "ambiguity is not self-evident from the writing." *Galloway Corp.*, 250 Va. at 502, 464 S.E.2d 349. For example, if a will were to devise property to "my nephew John" when the decedent had two nephews named John, that would be properly classified as a latent ambiguity.

With these different types of ambiguities in mind, the general rule in Virginia is "that insurance contracts, like other contracts, generally are to be construed according to their terms and without reference to parol evidence." *S. Ins. Co. v. Williams*, 263 Va. 565, 570, 561 S.E.2d 730 (2002). Consistent with this general rule, "parol evidence cannot be considered to explain a *patent ambiguity*, that is, to supply the understanding that the parties could have reasonably been expected to reach where the language of the instrument reflects no understanding." *Zehler v. E.L. Bruce Co., Inc.*, 208 Va. 796, 799, 160 S.E.2d 786 (1968) (emphasis added). "However, resort to parol evidence is proper where a *latent ambiguity* exists in a particular insurance contract." *Williams*, 263 Va. at 570, 561 S.E.2d 730 (emphasis added). *See SunTrust Mortg., Inc.*, 784 F.Supp.2d at 593, 2011 WL 1597530 at *4, 2011 U.S. Dist. LEXIS at *19 ("On the other hand, parol evidence has been considered to explain a latent ambiguity."). Therefore, in order to assess whether parol evidence is admissible, and thus whether definitions found in subsequent insurance policies may be considered, the Court must determine whether the term "pollutants" is patently or latently ambiguous in this context.

In the present case, the term "pollutants," when undefined, is patently ambiguous because, as discussed above, it can reasonably be interpreted in more than one way. It is not the type of term that appears "perfectly clear" at first, with the ambiguity only coming to light when viewed through the lens of subsequently discovered facts. Therefore, because the use of the term "pollutants" in the context of the Applicable Policy, without further definition, reflects a patent ambiguity, it cannot be explained by parol evidence. Accordingly, the Court will not consider the definition of "pollutants" provided in subsequent policies in order to clarify its meaning in the Applicable Policy. *See Birmingham Fire Ins. Co.*, 947 S.W.2d at 602–03.

### ii. Opinions from Other Jurisdictions

In addition to highlighting the fact that "pollutants" is defined in subsequent policies, to guide the Court's analysis Builders Mutual also points to cases from other

jurisdictions where the term "pollutant(s)" was undefined, yet considered unambiguous. Although, as mentioned above, in *City of Chesapeake* the Supreme Court of Virginia counseled against looking to other jurisdiction's treatment of this issue, the Court will briefly discuss the cases highlighted by Builders Mutual.

For example, Builders Mutual cites *Certain Underwriters at Lloyd's London v. C.A. Turner Construction Co.*, 112 F.3d 184 (5th Cir.1997). There, the Fifth Circuit was faced with the question of whether injuries caused by the release of phenol gas inside a tent were excluded from coverage under an applicable Pollution Exclusion. *Id.* at 185. Applying Texas law, the Fifth Circuit concluded that the Pollution Exclusion "clause does not limit its application to only those discharges causing environmental harm...." *Id.* at 188. Even though the term "pollution" was not defined in that case, the court could find no such "environmental harm" limitation in a Pollution Exclusion that stated coverage was excluded for "liability for any bodily and/or personal injury ... directly or indirectly caused by or arising out of seepage into or onto and/or pollution and/or contamination of air, land, water and/or any other property and/or any person irrespective *of the cause of the seepage and/or pollution and/or contamination, and whenever occurring.*" *Id.* at 188 (internal quotations omitted). However, such an exclusion has much broader language than the one before the Court in the present case and therefore is unhelpful in delineating the boundaries of the undefined term in the Applicable Policy.

Builders Mutual also relies upon *Florida Farm Bureau Insurance Co. v. Birge*, 659 So.2d 310, 311 (Fla.Dist.Ct.App.1994), for the proposition that the terms "pollutant" and "contaminant," when undefined, unambiguously excluded coverage for damage caused by raw sewage backing up into the

Birge's home. However, Builders Mutual cites to the dissenting opinion. According to the majority opinion, the policy was ambiguous. *Id.* In finding the policy ambiguous, the court stated that its "conclusion is supported by the availability of clear and unambiguous language that the insurance company could have used to exclude damage resulting from a backup of raw sewage." *Id.* As a result, that case is also of little support for Builders Mutual's position. *Contra U.S. Fire Ins. Co. v. Ace Baking Co.*, 164 Wis.2d 499, 476 N.W.2d 280, 283 (Wis.Ct.App.1991) (holding that a foreign substance that contaminated a food product during the manufacturing process was unambiguously a pollutant, despite the term not being defined in the relevant insurance policy).

### c. "Pollutants" is Ambiguous in this Context

Having concluded that the Court cannot consider the subsequent insurance policies, and having concluded that the case law urged by Builders Mutual is unpersuasive, such asserted countervailing considerations urged by Builders Mutual do not sway the Court from its initial conclusion that the term "pollutant," in the Total Pollution Exclusion of the Applicable Policy, "may be understood in more than one way." *Granite State Ins. Co.*, 243 Va. at 234, 415 S.E.2d 131 (quoting *Am. Reliance Ins. Co.*, 238 Va. at 547, 385 S.E.2d 583). Therefore, the term is ambiguous. Under Virginia law, "if an ambiguity exists, it must be construed against the insurer." *Res. Bankshares Corp.*, 407 F.3d at 636. Given this rule of construction, if the Court were to construe the ambiguity against Builders Mutual and read the term "pollutants" as applying only to traditional environmental harm, which is one reasonable reading in light of the above analysis and the term's lack of a definition, the allegations in Edmonds' complaint would fall

outside the reach of the Pollution Exclusion in the Applicable Policy because the damage allegedly occurred in a localized indoor area. Such damage is not prototypical environmental harm. In light of this interpretation, there is no need to analyze other terms in the Total Pollution Exclusion, such as discharge and dispersal, as might normally be the case, because no interpretation of those terms would provide coverage in light of the Court's holding that the term "pollutants" is ambiguous. As a result, the Total Pollution Exclusion does not relieve Builders Mutual of a duty to defend Parallel in the underlying Edmonds action. However, Builders Mutual also asserts an alternative ground for denying coverage.

### 2. "Your Work" Exclusion

██ Builders Mutual contends that the Edmonds *property* damage claims are excluded from coverage because of the Applicable Policy's "Your Work" exclusion. While such assertion may or may not be accurate, an exclusion that applies solely to Edmonds' property damage claims would not eliminate Builders Mutual's duty to defend Parallel in the pending state court action. The law in Virginia provides that "[w]hen an initial pleading 'alleges facts and circumstances, *some of which would, if proved*, fall within the risk covered by the policy,' the insurance company is obliged to defend its insured." *Parker v. Hartford Fire Ins. Co.*, 222 Va. 33, 35, 278 S.E.2d 803 (1981) (quoting *Lerner v. Safeco*, 219 Va. 101, 104, 245 S.E.2d 249 (1978)) (emphasis added). Therefore, even if the insurance company shows that some of the claims are not covered, if the Court concludes that other state claims may be covered, the insurance company still has a duty to defend the insured in the entire underlying action.

Edmonds' state court complaint alleges that chemicals released from the defective drywall "cause and have caused dangerous health consequences including, among other things ... headaches suffered by [Edmonds]." Compl. Ex. 2, at ¶ 12. Additionally, in at least three counts of his complaint, Edmonds contends that he has incurred "personal injury." *See, e.g., id.* at ¶ 26. Moreover, in the damages section of his complaint, Edmonds alleges that the "inherently defective drywall [ ] has caused damage to ... their health." *Id.* at ¶ 90. Therefore, even if the Court were to conclude that the "Your Work" exclusion relieved Builders Mutual of a duty to defend the *property* claims, that exclusion has no effect on Edmonds' personal injury allegations. As a result, since *some* of the claims would not be affected by the "Your Work" exclusion and thus would still "fall within the risk covered by the policy, the insurance company is obliged to defend its insured." *Parker*, 222 Va. at 35, 278 S.E.2d 803 (internal citations omitted).

### IV. Conclusion

Based on the analysis above, the Court finds that the term "pollutants," when undefined, and in the context of the Applicable Policy, does not unambiguously apply to "sulfide gases" emitted from defective drywall, as pled in Edmonds' complaint. As a result, since "doubtful, ambiguous language in an insurance policy will be given an interpretation which grants coverage, rather than one which withholds it," *Granite State Ins. Co.*, 243 Va. at 234, 415 S.E.2d 131 (quoting *Am. Reliance Ins. Co.*, 238 Va. at 547, 385 S.E.2d 583), the Court concludes that the Total Pollution Exclusion does not exclude from coverage the damage alleged in this case. Additionally, since the "Your Work" exclusion only applies to property damage, it has no effect on Edmonds' claims for bodily injury. Therefore, since at the very least, some of Edmonds' state court claims survive the application of the "Your Work" exclusion, that clause alone cannot eliminate Builders

Mutual's duty to defend Parallel in the underlying Edmonds action. Consequently, the Court **DENIES IN PART** Builders Mutual's motion for summary judgment. Although the Defendants have not filed cross motions for summary judgment, the Court, sua sponte, **GRANTS** summary judgment in favor of the Defendants with respect to Builders Mutual's duty to defend Parallel in Edmonds' underlying state court suit.[9] The Court **HOLDS IN ABEYANCE** Builders Mutual's motion on the issue of indemnity until the underlying action is resolved. The resolution of that portion of the motion requires the Court to analyze "litigated facts," the determination of which must await resolution of Edmonds' underlying state court case.

The Clerk is **DIRECTED** to send a copy of this Order to all counsel of record.

**IT IS SO ORDERED.**

---

9. "While Fed.R.Civ.P. 56 does not expressly provide that district courts may enter summary judgments sua sponte, there can be little doubt that district courts inherently possess that power." *United States Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n,* 873 F.2d 731, 735 (4th Cir.1989) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). However, before granting such relief, the Court must "provide the losing party with an adequate opportunity to demonstrate a genuine issue of material fact." *Id.* (citations omitted). Here, Builders Mutual was given a full opportunity, in briefing and at oral argument, to present legal and factual arguments with respect to its motion for summary judgment. The Court considered those arguments and determined that the insurance policy's exclusions did not relieve Builders Mutual of a duty to defend Parallel. Given that conclusion, it is axiomatic that Builders Mutual *does* in fact have a duty to defend Parallel. Since this conclusion was reached by simply comparing the state court complaint to the insurance policy, there are no material facts that Builders Mutual could present to alter that conclusion. *See Atkinson Dredging Co. v. St. Paul Fire & Marine Ins. Co.,* 836 F.Supp. 341, 344 (E.D.Va.1993) (holding that when the court finds an ambiguity in an insurance contract and construes it in favor of the insured, "[t]hat result would eliminate the need for a trial because the interpretation required by law will resolve the controversy and leave no issue for factual determination.").