Present:  Hassell, C.J., Lacy, Keenan, Koontz, Kinser, and Lemons, JJ., and Compton,* S.J.

CITY OF CHESAPEAKE

v.  Record No. 051986     OPINION BY JUSTICE DONALD W. LEMONS
                                    April 21, 2006
STATES SELF-INSURERS
RISK RETENTION GROUP, INC.

UPON A QUESTION OF LAW CERTIFIED BY
THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA

Pursuant to Article VI, Section 1 of the Constitution of Virginia and our Rule 5:42, the United States District Court for the Eastern District of Virginia ("district court"), by its order entered September 22, 2005, certified to this Court a single question of law relating to coverage questions under an insurance policy:

Was coverage excluded under the pollution exclusion in the Policy for claims made in suits filed by 213 women who alleged that they suffered one or more miscarriages resulting from exposure to THMs in the City's water supply?

By order entered on November 1, 2005, we accepted the certified question.

I.  Background

This certified question is the epilogue to City of Chesapeake v. Cunningham, 268 Va. 624, 604 S.E.2d 420 (2004). Helen Cunningham ("Cunningham") was the lead plaintiff of a

---

* Senior Justice Compton participated in the hearing and decision of this case before his death on April 9, 2006.

combined group of 214 plaintiffs who alleged that their miscarriages were caused by exposure to trihalomethanes ("THMs") in the City of Chesapeake's water system on various dates from 1984 through 2000. These cases were combined for pretrial proceedings under the Virginia Multiple Claimants Litigation Act, Code §§ 8.01-267.1 through -267.9. Cunningham sought recovery for, among other things, an alleged bodily injury due to the consumption of toxic drinking water provided by the City of Chesapeake ("the City"). Cunningham, 268 Va. at 627, 604 S.E.2d at 422. We held that the alleged claims against the City were barred by sovereign immunity. Id. at 640, 604 S.E.2d at 430. The certified question now before the Court addresses whether the City may obtain insurance coverage and reimbursement for its legal fees incurred as a result of the litigation in Cunningham. These fees and costs totaled $2,413,959.08.

The case is currently pending in the United States District Court for the Eastern District of Virginia (Norfolk Division), awaiting resolution of the motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) filed by States Self-Insurers Risk Retention Group, Inc. ("States Insurance"). If the certified question is answered in the affirmative, there is no coverage and the City is not entitled to reimbursement of its legal fees and costs.

2

If the certified question is answered in the negative, then the federal district court must determine various issues, including the amount to which the City may be entitled from States Insurance.

## II.  Analysis

The City contracted with States Insurance for a "Public Entity Excess Liability Insurance Policy."  The dispute, and the certified question, involve the exclusion provision in Section I.B.9.a of that Policy, which states in relevant part that coverage does not apply to any damages for:

> *Bodily injury* or *property damage* arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of *pollutants*:
>
> > (1)  at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any "Insured";
> >
> > (2)  at or from any premises, site or location which is or was at any time used by or for any "Insured" or others for the handling, storage, disposal, processing or treatment of waste;
> >
> > (3)  which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any "Insured" or any person or organization for whom any "Insured" may be legally responsible; or
> >
> > (4)  at or from any premises, site or location on which any "Insured" or any contractors or subcontractors working

3

directly or indirectly on any "Insured's" behalf are performing operations:

> (a) if the *pollutants* are brought on or to the premises, site or location in connection with such operations by such "Insured", contractor or subcontractor; or

> (b) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of *pollutants*.

The policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death by any of these at any time."  The policy defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed."

The interpretation of a contract presents a question of law.  Bentley Funding Group, L.L.C. v. SK&R Group, L.L.C., 269 Va. 315, 324, 609 S.E.2d 49, 53 (2005).  The contract is construed as written, without adding terms that were not included by the parties.  Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984).  When the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning.  Bridgestone/Firestone, Inc. v. Prince William Square Assocs., 250 Va. 402, 407, 463 S.E.2d 661, 664

4

(1995).  "Words that the parties used are normally given their usual, ordinary, and popular meaning.  No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly."  D.C. McClain, Inc. v. Arlington County, 249 Va. 131, 135-36, 452 S.E.2d 659, 662 (1995).

By definition, the THMs involved in Cunningham are "contaminants."  See 42 U.S.C. § 300g-1 (2000); 40 C.F.R. §§ 141.2 and 142.2 (2005); see also Cunningham, 268 Va. at 628-29, 604 S.E.2d at 423 (explaining that THMs have been regulated as contaminants under the Federal Safe Drinking Water Act and its implementing regulations since 1979).  Therefore, according to the plain language of the insurance policy in the instant case, because they are "contaminants," THMs are "pollutants."

The parties have engaged each other and this Court in analysis of the meaning of the various words used in their contract: "discharge, dispersal, seepage, migration, release or escape."  For example, the City argues that THMs are "created" by the chemical combination of chlorine and organic matter contained in the water.  Because THMs are "created," they are not pre-existent and, consequently, cannot be subject to "discharge, dispersal, seepage, migration, release or

5

escape."  However, the City did concede at oral argument that the THMs, however created, were "released" by the City when a customer turned on the faucet in a residence or business.

While the City's concession alone would resolve this controversy, we need look no further than the underlying motion for judgment in Cunningham to reach the same conclusion.  In her motion for judgment, Cunningham alleged bodily injury due to exposure to THMs because "THMs are a poisonous byproduct of disinfection that are disposed of and released into the domestic water at or about the City's water treatment facility or facilities as a result of the process of water treatment and disinfection employed by the City."  Cunningham also alleged a "discharge" of THMs by the City.  These allegations bring the underlying suit, and its associated legal fees and costs at issue in this certified question, into the ambit of the exclusion provision now before the Court because the legal fees and costs were from a suit involving "[b]odily injury . . . arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants."  (Emphasis added.)

## III.  Conclusion

In their respective arguments, the parties asked the Court to examine how other jurisdictions have resolved similar

6

insurance contract disputes.  It is unnecessary to do so, however, because the law of this Commonwealth and the plain language of the insurance policy provide the answer to the certified question.  We hold that coverage was excluded under Section I.B.9.a of the Policy for claims made in suits filed by 214 women who alleged that they suffered one or more miscarriages resulting from exposure to THMs in the City of Chesapeake's water supply.  Accordingly, we answer the certified question in the affirmative.

<u>Certified question answered in the affirmative</u>.