PRESENT:  Hassell, C.J., Keenan, Koontz, Lemons, Goodwyn, JJ.,
and Carrico and Russell, S.JJ.

POCAHONTAS MINING LIMITED LIABILITY COMPANY

v.   Record No. 071608

CNX GAS COMPANY, LLC

OPINION BY
JUSTICE BARBARA MILANO KEENAN
September 12, 2008

GEOMET OPERATING COMPANY, INC.

v.   Record No. 071609

CNX GAS COMPANY, LLC


FROM THE CIRCUIT COURT OF BUCHANAN COUNTY
Nicholas E. Persin, Judge Designate

In this appeal, we consider whether the provisions in a
lease granting to a lessee exclusive rights in coalseam gas on
the lessor's property also granted to the lessee the exclusive
right to construct and maintain pipelines and structures to
transport any gas over the lessor's property.

Pocahontas Mining Limited Liability Company (Pocahontas)
is the owner of a tract of land consisting of over 20,000
acres (the property) located partially in Buchanan and
Tazewell Counties, and partially in West Virginia.  In 1998,
Pocahontas[1] entered into a lease (the 1998 lease) with
Pocahontas Gas Partnership (PGP) granting to PGP rights in the

_____

[1] The entity named in the lease was Pocahontas Mining
Company Limited Partnership, L.L.P., which later became
Pocahontas Mining Limited Liability Company.

coalseam gas located beneath the surface of the property.  The relevant granting provisions of the lease (the granting clause) provided that:

> Lessor grants, leases and lets exclusively unto Lessee any and all rights it has to all of the coalseam gas, including, but not limited to, coalbed methane gas, coalbed gas, methane gas, gob gas, occluded natural gas in any formation or other naturally occurring gases contained in or associated with any coalseam lying below the base of the Tiller seam and all zones in communication therewith and all associated natural gas and other hydrocarbons contained therein and all gas originating or produced from coalseam to coalseam (hereinafter collectively referred to as "coalseam gas" or "coalbed methane"), underlying [the property] together with any and all rights necessary or convenient to develop, produce, market and sell said coalseam gas including, but not limited to, the exclusive rights of exploring, drilling, producing, gathering, transporting, and selling the coalseam gas, the rights to construct and maintain all pipelines, tanks, structures, and utility lines that Lessee may deem necessary and convenient for the production and/or transportation of coalseam gas or other gas, whether or not owned, leased, or produced by Lessee, from this and other lands, whether or not owned or leased by Lessee . . . .

Further, the 1998 lease had a clause addressing Pocahontas' reservation of certain rights that provided:

> Except as granted and leased herein, there is excepted and reserved to Lessor the entire ownership and control of the lands included herein and the oil, gas, coal, stone, sand, water, timber, and other minerals and products therein and thereon, with the right to use and dispose of the same for all purposes other than those for which this Lease is made except as such ownership and control may be leased to other parties by other instruments.

In 2006, Pocahontas and GeoMet Operating Co., Inc. (GeoMet) entered into a right of way agreement (the right of

way agreement), in which Pocahontas granted to GeoMet the exclusive right to construct, operate, and maintain a pipeline to transport natural gas across, through, upon, over, and under a portion of the property. In accordance with the right of way agreement, GeoMet began to construct a pipeline to transport natural gas. Shortly thereafter, agents of CNX Gas Company, L.L.C. (CNX), PGP's successor in interest under the 1998 lease, installed gates and prevented representatives of GeoMet or Pocahontas from obtaining access to the property.[2]

GeoMet and Pocahontas filed a complaint in the Circuit Court of Buchanan County (the circuit court) seeking a declaratory judgment interpreting the respective rights of GeoMet, Pocahontas, and CNX under the 1998 lease and the right of way agreement. GeoMet and Pocahontas also sought an injunction to prevent CNX from blocking access to the property. CNX filed a counterclaim seeking a declaratory judgment of the parties' rights under the 1998 lease and the right of way agreement.[3]

The parties filed cross motions for summary judgment. In May 2007, the circuit court entered an order (the May order)

_____

[2] Although CNX was not a party to the 1998 lease, CNX is the successor in interest to PGP, the named lessee. For purposes of this opinion, we will refer to the rights granted under the 1998 lease as rights granted to CNX.

[3] Additionally, CNX sought adjudication of its rights under a deed of easement it entered into with Pocahontas in 1998.

3

granting CNX's motion for summary judgment. In that order, the circuit court held that the 1998 lease was unambiguous and that all the rights CNX possessed under the lease were exclusive, including the rights to construct and maintain all pipelines and all structures on the property and to transport coalseam gas or other gas on, over, under, or through the property. The circuit court ordered GeoMet to remove its pipeline from the property and to cease its transportation of coalseam gas or other gas on, over, under, or through the property.

GeoMet and Pocahontas appealed the injunctive provisions of the May order to this Court under Code § 8.01-626. Concluding that the May order contained injunctive relief that CNX did not request, this Court vacated the portion of the order granting injunctive relief and remanded the case to the circuit court. The circuit court later certified the remaining provisions of the May order to this Court for review under the interlocutory appeal procedures of Code § 8.01-670.1. In accordance with the circuit court's certification, GeoMet and Pocahontas seek review in this Court of those remaining provisions in the circuit court's award of summary judgment.

GeoMet and Pocahontas (collectively, GeoMet) argue that the terms of the 1998 lease are unambiguous. GeoMet asserts

4

that under a plain reading of the lease, the term "exclusively" in the phrase "Lessor grants, leases and lets exclusively unto Lessee" refers only to the rights to the coalseam gas estate. Thus, GeoMet contends that in the 1998 lease, Pocahontas granted to CNX exclusive rights to the coalseam gas, "together with" non-exclusive "rights necessary or convenient to develop, produce, market and sell said coalseam gas."

GeoMet cites additional language in the 1998 lease in support of its position that some of the rights granted in the lease are exclusive, while other rights granted are non-exclusive. GeoMet points to the language granting "the exclusive rights of exploring, drilling, producing, gathering, transporting, and selling the coalseam gas, the rights to construct and maintain all pipelines, tanks, structures, and utility lines. . . ." (emphasis added). GeoMet contends that the omission of the term "exclusive" with respect to the rights to construct and maintain pipelines, tanks, structures, and utility lines indicates that those rights granted to CNX are not exclusive rights.

In response, CNX agrees that the 1998 lease is unambiguous, but contends that under a plain reading of the lease, all the rights granted in the lease are exclusive to CNX. In support of its argument, CNX cites to the lease

language that "[l]essor grants, leases and lets exclusively unto [l]essee," and argues that the term "exclusively" governs all the rights granted to CNX in the lease. CNX further contends that its interpretation of the term "exclusively" does not conflict with other terms of the lease because the sole purpose of the lease was to grant to CNX exclusive rights, including the exclusive right to transport gas from any source.

Alternatively, CNX argues that if the lease terms do not unambiguously grant to CNX such exclusive rights, then the disputed lease language must be considered ambiguous and the case must be remanded to the circuit court for the receipt of parol evidence concerning the parties' intent when the lease was executed. We disagree with CNX's arguments.

In our analysis of the lease terms, we rely on established principles of contract interpretation. The question whether a contract is ambiguous presents an issue of law. Virginia Elec. & Power Co. v. Northern Virginia Reg'l Park Auth., 270 Va. 309, 315, 618 S.E.2d 323, 326 (2005); Video Zone, Inc. v. KF&F Props. L.C., 267 Va. 621, 625, 594 S.E.2d 921, 923 (2004); Utsch v. Utsch, 266 Va. 124, 129, 581 S.E.2d 507, 509 (2003); Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 631, 561 S.E.2d 663, 667 (2002). Accordingly, on appeal, we review the circuit court's

6

interpretation of the disputed lease provisions de novo. *Virginia Elec. & Power Co.*, 270 Va. at 315, 618 S.E.2d at 326; *Video Zone, Inc.*, 267 Va. at 625, 594 S.E.2d at 923; *Utsch*, 266 Va. at 129, 581 S.E.2d at 509; *Eure*, 263 Va. at 631, 561 S.E.2d at 667. We do not accord any deference to the circuit court's resolution of this question of law because we are afforded the same opportunity as the circuit court to interpret the terms of the parties' contract. *Video Zone, Inc.*, 267 Va. at 625, 594 S.E.2d at 923; *Pyramid Dev., L.L.C. v. D&J Assocs.*, 262 Va. 750, 754, 553 S.E.2d 725, 727 (2001).

A court's primary focus in considering disputed contractual language is to determine the parties' intention, which should be ascertained, whenever possible, from the language the parties employed in their agreement. *Flippo v. CSC Assocs. III, L.L.C.*, 262 Va. 48, 64, 547 S.E.2d 216, 226 (2001); *Langman v. Alumni Ass'n of the Univ. of Va.*, 247 Va. 491, 498-99, 442 S.E.2d 669, 674 (1994); *Camp v. Camp*, 220 Va. 595, 597, 260 S.E.2d 243, 245 (1979). An ambiguity exists when the contract's language is of doubtful import, is susceptible of being understood in more than one way or of having more than one meaning, or refers to two or more things at the same time. *Video Zone, Inc.*, 267 Va. at 625, 594 S.E.2d at 923; *Tuomala v. Regent Univ.*, 252 Va. 368, 374, 477 S.E.2d 501, 505 (1996); *Galloway Corp. v. S.B. Ballard*

7

Constr., 250 Va. 493, 502, 464 S.E.2d 349, 355 (1995).  The mere fact that the parties disagree about the meaning of the contract's terms is not evidence that the contract language is ambiguous.  Pocahontas Mining Ltd. Liab. Co. v. Jewell Ridge Coal Corp., 263 Va. 169, 173, 556 S.E.2d 796, 771 (2002); Galloway, 250 Va. at 502, 464 S.E.2d at 354; Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984).

In determining whether disputed contractual terms are ambiguous, we consider the words employed by the parties in accordance with their usual, ordinary, and popular meaning.  Video Zone, Inc., 267 Va. at 626, 594 S.E.2d at 924; Haisfield v. Lape, 264 Va. 632, 637, 570 S.E.2d 794, 796 (2002); Pocahontas Mining Ltd. Liab. Co., 263 Va. at 173, 556 S.E.2d at 772.  No word or phrase employed in a contract will be treated as meaningless if a reasonable meaning can be assigned to it, and there is a presumption that the contracting parties have not used words needlessly.  City of Chesapeake v. States Self-Insurers Risk Retention Group, Inc., 271 Va. 574, 578, 628 S.E.2d 539, 541 (2006); Westmoreland-LG&E Partners v. Virginia Elec. & Power Co., 254 Va. 1, 11, 486 S.E.2d 289, 294 (1997).  Further, the omission of a particular term from a contract is evidence that the parties intended to exclude that term.  Bentley Funding Group, L.L.C. v. SK&R Group, L.L.C., 269 Va. 315, 330, 609 S.E.2d 49, 56 (2005); First Nat'l Bank

v. Roy N. Ford Co., 219 Va. 942, 946, 252 S.E.2d 354, 357 (1979).

In ascertaining the parties' intention regarding specific contract provisions, we consider the document as a whole. American Spirit Ins. Co. v. Owens, 261 Va. 270, 275, 541 S.E.2d 553, 555 (2001); Lansdowne Development Co. v. Xerox Realty Corp., 257 Va. 392, 401, 514 S.E.2d 157, 161 (1999); Westmoreland-LG&E Partners, 254 Va. at 11, 486 S.E.2d at 294; Langman, 247 Va. at 498-99, 442 S.E.2d at 675. When the writing, considered as a whole, is clear, unambiguous, and explicit, a court asked to interpret such a document should look no further than the four corners of the instrument. Virginia Elec. & Power Co., 270 Va. at 316, 618 S.E.2d at 326; Langman, 247 Va. at 498, 442 S.E.2d at 675; Trailsend Land Co. v. Virginia Holding Corp., 228 Va. 319, 325, 321 S.E.2d 667, 670 (1984).

Applying these principles, we conclude that the disputed lease provisions are unambiguous. By selectively identifying certain rights as "exclusive," while omitting any reference to the term "exclusive" in describing other rights, the lease language signifies the parties' clear intention that only some, rather than all, the stated rights are exclusively granted to CNX. The lease gives CNX exclusive rights to the coalseam gas estate, including the exclusive rights of

9

exploration, drilling, production, gathering, transportation, and sale of the coalseam gas. The lease also grants to CNX non-exclusive rights, including the right to construct and maintain pipelines and other facilities necessary and convenient for the production and transportation of the coalseam gas, and of other gas from whatever source.

Notably, the language in the lease granting to CNX rights to construct and maintain pipelines does not limit Pocahontas' right to use the property for those purposes, except to require that Pocahontas permit CNX to construct and maintain "all pipelines, tanks, structures, and utility lines that [CNX] may deem necessary and convenient" for the production and transportation of the coalseam gas or other gas. The language at issue merely details CNX's right to erect pipelines and other facilities and to use those pipelines and facilities for the purposes described in the lease.

The lease language is not rendered ambiguous by the parties' use of the term "exclusively," which appears at the beginning of the disputed language. The parties' inclusion of this term merely clarified that Pocahontas granted exclusively to CNX all the rights to the coalseam gas underlying the property. CNX's more expansive interpretation of the term "exclusively" is unavailing, because acceptance of CNX's position would impermissibly require us to treat as

meaningless and redundant the lease's later designation of particular rights as "exclusive." See States Self-Insurers, 271 Va. at 578, 628 S.E.2d at 541; Westmoreland-LG&E Partners, 254 Va. at 11, 486 S.E.2d at 294.

Viewed in this context, the absence of a term denoting exclusivity in the description of CNX's "rights to construct and maintain all pipelines" is significant. Plainly, by omitting any reference to an exclusive right in addressing the subject of pipelines on the leased property, the parties expressed their intent that such rights of CNX would not be exclusive.[4] See Bentley Funding Group, 269 Va. at 330, 609 S.E.2d at 57; First Nat'l Bank, 219 Va. at 946, 252 S.E.2d at 357.

The opposite conclusion urged by CNX is additionally unpersuasive because that conclusion would render inoperative Pocahontas' reservation of rights to the property for such purposes as the development of oil and non-coalseam gas, which would have to be transported from the property through pipelines. Further, under CNX's view of the lease language, Pocahontas would be precluded from engaging in any activity

---

[4] CNX also argues that in determining the parties' intent, we should consider a memorandum of lease that was executed contemporaneously with the 1998 lease. However, because we determine that the 1998 lease was unambiguous, we limit our consideration to the four corners of that document. See Virginia Elec. & Power Co., 270 Va. at 316, 618 S.E.2d at 326; Langman, 247 Va. at 498, 442 S.E.2d at 674.

11

that was "necessary or convenient" for CNX's utilization of its interest in the leasehold property, irrespective whether Pocahontas' activities actually caused CNX to suffer any inconvenience or other difficulty. Such a construction would effect a sweeping evisceration of Pocahontas' other production rights in the property, in contravention of Pocahontas' express reservation of rights in the lease.

In sum, the clear purpose of the lease was to allow CNX to produce, transport, and sell the coalseam gas obtained from the property, and to transport "other gas" from whatever source over Pocahontas' property. The disputed lease provisions protect CNX's rights to take such actions as are necessary and convenient to conduct these activities, but do not permit CNX to prevent other uses of the land that do not affect CNX's exercise of its stated lease rights.

For these reasons, we will reverse the circuit court's order declaring the parties' rights under the 1998 lease and remand the case for such further action as may be required consistent with the principles expressed in this opinion.

<u>Reversed and remanded.</u>

12