**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 10-1396**

---

SHARON WILLIAMS,

　　　　　Plaintiff – Appellant,

　　　v.

CDP, INCORPORATED; CELLAR DOOR MANAGEMENT, INCORPORATED;
JJJ MANAGEMENT, INCORPORATED; CELLAR DOOR AMPHITHEATER,
INCORPORATED; SFX ENTERTAINMENT, INCORPORATED, A Wholly
Owned Subsidiary of Clear Channel Communications,
Incorporated, Successor in Interest to CDP, Incorporated
and Cellar Door Amphitheater, Incorporated; CLEAR CHANNEL
COMMUNICATIONS, INCORPORATED, Successor in Interest to SFX
Entertainment, Incorporated d/b/a Clear Channel
Entertainment; LIVE NATION WORLDWIDE, INCORPORATED,
Successor in Interest to CDP, Incorporated; JOHN J. BOYLE,

　　　　　Defendants – Appellees.

---

Appeal from the United States District Court for the Eastern
District of Virginia, at Newport News. Raymond A. Jackson,
District Judge. (4:09-cv-00084-RAJ-TEM)

---

Argued: December 8, 2011　　　　　Decided: March 22, 2012

---

Before TRAXLER, Chief Judge, and AGEE and DIAZ, Circuit Judges.

---

Vacated and remanded by unpublished opinion. Judge Diaz wrote
the opinion, in which Chief Judge Traxler and Judge Agee joined.

---

**ARGUED:** Harris D. Butler, BUTLER ROYALS, PLC, Richmond,
Virginia, for Appellant. Susan Childers North, LECLAIRRYAN, PC,

Williamsburg, Virginia; Scott William Kezman, KAUFMAN & CANOLES, PC, Norfolk, Virginia, for Appellees. **ON BRIEF:** Charles L. Williams, BUTLER WILLIAMS & SKILLING, PC, Richmond, Virginia, for Appellant. Brian G. Muse, LECLAIRRYAN, PC, Williamsburg, Virginia, for Appellees CDP, Incorporated, Cellar Door Amphitheater, Incorporated, SFX Entertainment, Incorporated, Clear Channel Communications, Incorporated, and Live Nation Worldwide, Incorporated; Marc E. Darnell, KAUFMAN & CANOLES, PC, Norfolk, Virginia, for Appellees Cellar Door Management, Incorporated, JJJ Management, Incorporated, and John J. Boyle.

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

David Williams and his employer CDP, Inc. entered into a Deferred Compensation Agreement that provided in part for a $100,000 annual benefit payable to his spouse, Sharon Williams, after his death. David Williams died while still employed by CDP. Following her husband's death, Sharon Williams began receiving monthly payments totaling $100,000 per year from David Williams's former employer. Nearly nine years later, the payments stopped. Sharon Williams sued CDP and several affiliated companies, seeking to enforce the spousal death benefit provision.

CDP and the other defendants moved for judgment on the pleadings, contending that the Deferred Compensation Agreement unambiguously required David Williams to retire as a condition precedent to payment of the benefit. The district court agreed and granted the defendants' motion. Because the provision at issue is susceptible to more than one meaning, we hold that the agreement is ambiguous and therefore vacate the judgment of the district court.

I.

David Williams, a music and theater promoter, and his employer CDP, Inc. entered into a Deferred Compensation Agreement dated December 1, 1994. That same day, the parties

3

also signed a separate Employment Agreement. The Deferred Compensation Agreement states that the Employment Agreement governs the employment relationship between the parties, references the restrictive covenants contained in that agreement, and adopts its defined terms where applicable. The term of the Deferred Compensation Agreement began on the date of the agreement and continued through David Williams's death. The term of the Employment Agreement also began on the date of the agreement but, unlike the Deferred Compensation Agreement, ended upon David Williams's termination. Both contracts were guaranteed by Cellar Door Management, Inc.; Cellar Door Amphitheater, Inc.; and John J. Boyle or any entity in which he owned an interest.

The Deferred Compensation Agreement contains a paragraph that defines both the deferred compensation payable to David Williams as well as the death benefit payable to his spouse. The paragraph first states that, commencing upon his retirement and termination, David Williams is entitled to annual payments equal to the greater of $100,000 or the sum of thirty-three percent of available cash and amounts paid out from business operations. The next sentence of the paragraph describes the spousal death benefit and provides for a $100,000 annual payment to Sharon Williams if she and her husband are still married when he dies.

David Williams died on January 27, 1999 while still employed by CDP. Following his death, CDP and Cellar Door Management began making monthly payments to Sharon Williams totaling $100,000 per year. In June 2008, the payments stopped. Thereafter, Sharon Williams filed suit in Virginia Circuit Court, alleging (1) breach of contract against CDP; Cellar Door Management; JJJ Management, Inc.; SFX Entertainment, Inc.; Clear Channel Communications, Inc.; Live Nation Worldwide, Inc.; and Boyle; (2) breach of guaranty against Cellar Door Management, Cellar Door Amphitheater, SFX, Clear Channel, and Live Nation; (3) a third-party beneficiary claim against Boyle; and (4) a third-party beneficiary claim against all defendants. Each of the claims stemmed from the alleged breach of the spousal death benefit provision in the Deferred Compensation Agreement.

The defendants removed the case to federal district court, asserting diversity among the real parties in interest. As of the date of the lawsuit, Cellar Door Management had changed its name to JJJ Management. Similarly, through dissolutions and corporate successions, CDP, SFX Entertainment, and Clear Channel had all been combined into Live Nation. Following removal, Live Nation filed an answer on behalf of CDP, SFX, and Clear Channel (collectively "Live Nation"), while Boyle and JJJ Management—as successor in interest to Cellar Door Management—each filed responses to the complaint.

Live Nation moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). JJJ Management later moved to adopt Live Nation's motion. The district court granted the defendants' motion, holding as a matter of law that the Deferred Compensation Agreement unambiguously requires that David Williams be retired as a condition precedent to payment of the spousal death benefit. Because David Williams was still employed when he died, the district court concluded that Sharon Williams failed to state a claim upon which relief could be granted and ordered the case dismissed. Sharon Williams appealed.

## II.

We review a district court's dismissal under Rule 12(c) de novo, applying the same standard we would to a Rule 12(b)(6) motion to dismiss for failure to state a claim. Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 591 (4th Cir. 2004) (citing Burbach Broadcasting Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002)). Accordingly, we assume all facts alleged are true and draw all reasonable inferences in favor of the plaintiff, id., to determine whether the complaint alleges a set of facts sufficient to state a claim that is "plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

The issue of whether a contract is ambiguous presents a question of law that we review de novo. Moore Bros. Co. v. Brown & Root, Inc., 207 F.3d 717, 726 (4th Cir. 2000); Video Zone, Inc. v. KF & F Props., L.C., 594 S.E.2d 921, 923 (Va. 2004). In a contract dispute, judgment on the pleadings may be appropriate " 'where an agreement is complete on its face and is plain and unambiguous in its terms.' " Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 405 (4th Cir. 1998) (quoting Lerner v. Gudelsky Co., 334 S.E.2d 579, 584 (Va. 1985)). If a particular term is ambiguous, however, the meaning of that term presents an issue of fact that precludes dismissal on a motion for judgment on the pleadings. Martin Marietta Corp. v. Int'l Telecomms. Satellite Org., 991 F.2d 94, 97 (4th Cir. 1992).

Under Virginia law,[1] "[t]he language of a contract is ambiguous if 'it may be understood in more than one way or when it refers to two or more things at the same time.' " Video Zone, 594 S.E.2d at 923 (quoting Eure v. Norfolk Shipbuilding & Drydock Corp., 561 S.E.2d 663, 668 (Va. 2002)). "[A]n ambiguity, if it exists, must appear on the face of the instrument." Id.; see also Westmoreland-LG&E Partners v. Va. Elec. & Power Co., 486 S.E.2d 289, 294 (Va. 1997) (explaining

---

[1] Both agreements specify that Virginia law governs issues of interpretation.

that courts will resort to extrinsic evidence of intent only if the terms are ambiguous). "In determining whether disputed contractual terms are ambiguous, we consider the words employed by the parties in accordance with their usual, ordinary, and popular meaning." Pocahontas Mining LLC v. CNX Gas Co., 666 S.E.2d 527, 531 (Va. 2008). Courts treat the omission of a particular term from a contract as evidence that the parties intended to exclude that term. Id.

In determining whether ambiguity exists, " '[a] contract must be construed as a whole to determine the parties' intent with respect to specific provisions.' " Va. Elec., 486 S.E.2d at 294 (quoting Hooper v. Musolino, 364 S.E.2d 207, 212 (Va. 1988)). When parties enter into multiple agreements related to the same subject matter on the same day, courts will construe the documents together to ascertain the meaning. Countryside Orthopaedics, P.C. v. Peyton, 541 S.E.2d 279, 284 (Va. 2001).

III.

In this case, the disputed provision appears in paragraph 3 of the Deferred Compensation Agreement and states as follows:

> 3. Deferred Compensation; Death Benefit; and Payments for Restrictive Covenants. Commencing upon the Employee's retirement from the Employer and the termination of his employment under the Employment Agreement and continuing for the remaining Term of this Agreement, the Employee shall be paid an amount per annum equal to the greater of (i) $100,000 or (ii)

8

the sum of (a) 33 percent of Available Cash[2] and (b) the CDA Amount.[3]  <u>If, at the time of Employee's death, Employee is survived by, and is still married to, his current spouse (i.e., his spouse as of the date this Agreement is executed), then the Employer shall either (i) pay to such spouse $100,000 per annum for her life or (ii) purchase a commercial annuity that will pay her $100,000 per annum for her life</u>.

J.A. 31 (emphasis added).  The dispute in this case turns on whether the opening clause of the first sentence in paragraph 3 also modifies the second sentence, thus requiring that David Williams be retired as a condition precedent to the obligation to pay the spousal death benefit.

Although the district court's view of the paragraph is certainly reasonable, we conclude that there is another equally reasonable interpretation of the words employed by the parties. As an initial matter, the agreement employs a full stop after describing deferred compensation in the first sentence before

---

[2] The Employment Agreement defines "Available Cash" as "the excess of cash receipts of the Company . . . during such calendar year over the sum of (i) all costs and expenses incident to the operation and management of the Company . . . and (ii) amounts actually allocated during such year in the discretion of the Board of Directors of the Company as reserves to pay taxes, insurance, debt service and/or other costs, expenses and liabilities of the Company."  J.A. 22.  The Deferred Compensation Agreement expressly adopts the definitions contained in the Employment Agreement.

[3] For purposes of the agreements, "CDA Amount" means "an amount equal to the amount of any distribution made to John J. Boyle or any member of his immediate family from the operation of Cellar Door Amphitheater, Inc."  J.A. 23.

9

turning to the spousal death benefit in the second sentence. As a result, the language stating "[c]ommencing upon Employee's retirement" appears in a sentence separate from the description of the spousal death benefit. Moreover, the second sentence does not repeat or refer to the condition contained in the opening clause of the first sentence. See Pocahontas, 666 S.E.2d at 531 ("[T]he omission of a particular term from a contract is evidence that the parties intended to exclude that term."). In fact, the only condition contained in the sentence describing the spousal death benefit is that David Williams must be "survived by, and . . . still married to, his current spouse (i.e., his spouse as of the date this Agreement is executed)" at the time of his death. J.A. 31. Given this structure and the omission of the retirement condition from the sentence describing the spousal death benefit, the issue of whether the requirement that David Williams retire modifies the entire paragraph is at the very least susceptible to multiple interpretations.[4]

---

[4] While not controlling, we also note that the title of paragraph 3 indicates that the paragraph relates to three distinct benefits. The title lists three items, each separated by a semicolon: "Deferred Compensation; Death Benefit; and Payments for Restrictive Covenants." J.A. 31. Based on this structure, it does not follow that a condition imposed with respect to one of these benefits necessarily applies to all three.

Live Nation offers two primary arguments in support of the district court's conclusion that David Williams's retirement was an unambiguous condition precedent to payment of the spousal death benefit. First, Live Nation contends that the meaning of the disputed language in the Deferred Compensation Agreement is clear when read in conjunction with the death benefit described in the separate but related Employment Agreement. Second, Live Nation suggests that, when read as a whole, the Deferred Compensation Agreement compels the conclusion that retirement was a condition precedent because the contract states elsewhere that postretirement advisory services were part of the consideration. We are not persuaded.

According to Live Nation, when the Deferred Compensation Agreement and the Employment Agreement are read together, it is clear that David Williams's retirement was a condition precedent to payment of the spousal death benefit. In support, Live Nation points to the following language from paragraph 5.3 of the Employment Agreement:

> Death. <u>In the event of the death of the Executive during the term of his employment hereunder</u>, the Company shall (i) pay to the estate of the deceased Executive any unpaid Base Salary through the Executive's date of death, (ii) pay to the estate of the deceased Executive the Bonus, if any, not yet paid to the Executive for any year prior to the date of death, at such time as the Bonus would otherwise have been payable to the Executive, and (iii) pay to the estate of the deceased Executive a portion of the Bonus, if any, for the year in which such death

11

occurs, at such time as the Bonus would otherwise have been payable to the Executive, equal to the product of (x) the quotient obtained by dividing (A) the number of months in the year that the Executive was employed by the Company prior to his death (including the month in which the death occurs if the death occurred on or after the fifteenth of such month), by (B) 12, times (y) the Bonus for the year in which the death occurs . . . . <u>The Company shall have no further liability hereunder</u> (other than for reimbursement for reasonable business expenses incurred prior to the date of the Executive's death. . . .).

<u>Id.</u> 24 (emphasis added). Live Nation contends that this separate death benefit cannot be reconciled with the spousal death benefit in the Deferred Compensation Agreement if both were payable regardless of whether David Williams retired prior to his death.

According to Live Nation, the only plausible construction is that the Employment Agreement governed the relationship between David Williams and CDP during the term of his employment, while the Deferred Compensation Agreement controlled following his retirement or termination. As such, Live Nation urges that paragraph 5.3 of the Employment Agreement establishes the exclusive benefits payable should David Williams die during the course of his employment, while paragraph 3 of the Deferred Compensation Agreement establishes the benefits payable if he dies following his retirement. Live Nation contends that this interpretation avoids the creation of two inconsistent death

12

benefit obligations should David Williams die while still employed by CDP.

Although Live Nation is correct that we construe the meaning of the two agreements together, see Countryside, 541 S.E.2d at 284, its argument ignores the term specified in the Deferred Compensation Agreement and mischaracterizes the benefit provided in each agreement. Contrary to Live Nation's assertion, the term of the Deferred Compensation Agreement did not begin following David Williams's retirement but instead began as of the date of the agreement. Thus it does not follow, as Live Nation suggests, that the Employment Agreement exclusively controlled during David Williams's employment, while the Deferred Compensation Agreement governed during his retirement.

Instead, the agreements describe two distinct benefits payable to two different beneficiaries. The death benefit in the Deferred Compensation Agreement was payable to David Williams's "current spouse" and provided an annual payment for her support following his death. The death provisions of the Employment Agreement, on the other hand, describe payments to David Williams's "estate," to include reimbursement for his unpaid salary, prior year's bonus, and the portion of the bonus earned during the year of his death. This latter benefit serves a purpose different than the spousal death benefit in the

13

Deferred Compensation Agreement and thus is not an inconsistent obligation, as Live Nation contends.

Live Nation also seeks support for its view from paragraph 4 of the Deferred Compensation Agreement, which provides in relevant part as follows:

> In consideration of the payments to be made hereunder during the Term of this Agreement, Employee agrees to perform such advisory and consultative services as may be reasonably requested by Employer, in order that the Employer may continue to benefit from the Employee's experience, knowledge, reputation and contacts in the industry.

J.A. 31–32. Live Nation contends that because David Williams could not perform these advisory services while still employed, the Deferred Compensation Agreement necessarily applies only during David Williams's retirement. Because paragraph 4 characterizes the advisory services as consideration for payments made under the agreement, Live Nation reasons that to interpret the agreement otherwise would mean that it fails for lack of consideration.

Live Nation's argument again ignores the language of the Deferred Compensation Agreement, which specifies that "[t]he term of this Agreement shall begin on the date of this Agreement and shall terminate upon the death of the Employee." Id. 31 (emphasis added). Live Nation was not obligated to pay spousal death benefits until after David Williams's death, meaning that all such payments were due after the term of the Deferred

14

Compensation Agreement. Given that the "payments" that were to serve as "consideration" under paragraph 4 of the Deferred Compensation Agreement were to be made "<u>during</u> the term of this Agreement," <u>id.</u> (emphasis added), plainly such payments could not include the spousal death benefit.[5]

Furthermore, the provision of advisory services was not the sole consideration specified in the agreement. For example, both agreements summarize David Williams's past service and the desire that he continue his "attention and dedication to the Company" as part of the consideration. <u>Id.</u> 21, 31. The agreements also refer to the mutual covenants contained therein, including the noncompetition provisions, as additional consideration for the payments. Accordingly, we hold that the Deferred Compensation Agreement was supported by adequate consideration and reject Live Nation's argument that failure to provide the advisory services renders the agreement, including the promise to pay the spousal death benefit, gratuitous.

---

[5] Our interpretation does not render the phrase "[i]n consideration of the payments to be made . . . during the term of this agreement" obsolete. The Deferred Compensation Agreement provides that David Williams was to receive deferred compensation payments following his retirement. These payments were due "<u>during</u> the term of the agreement," which expired upon his death. Accordingly, a reasonable view of the language of paragraph 4 is that the parties contemplated that the advisory services would serve as consideration for those payments.

In sum, after considering the words and phrases employed in paragraph 3 of the Deferred Compensation Agreement, we find that the spousal death benefit provision is susceptible to multiple meanings. Furthermore, after reviewing the agreement as a whole and construing it together with the Employment Agreement, we find nothing that clarifies the ambiguity or renders the provision subject to only one plausible interpretation. We therefore hold, contrary to the district court's conclusion, that the meaning of the spousal death benefit in the Deferred Compensation Agreement is ambiguous.

## IV.

For the foregoing reasons, we vacate the district court's judgment and remand for further proceedings consistent with this opinion.

<u>VACATED AND REMANDED</u>

16