COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Chafin and Malveaux
Argued at Norfolk, Virginia


JANE E. REID

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1862-16-1                      JUDGE TERESA M. CHAFIN
                                                    AUGUST 29, 2017
ANGAS W. REID


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
A. Bonwill Shockley, Judge

Peter V. Chiusano (Meghan M. Casey; Abrons, Chiusano &
Sceviour, P.L.L.C., on briefs), for appellant.

Kenneth B. Murov (Hannah E. Carter, on brief), for appellee.


This case involves a dispute over certain interpleader funds in the context of a divorce.

When Angas W. Reid ("husband") and his partner sold their business, the sale proceeds were

held in interpleader by the Circuit Court of the City of Norfolk ("Norfolk Circuit Court").

Husband and Jane E. Reid ("wife") agreed that wife was entitled to a fifty percent (50%) share of

any proceeds received by husband for his ownership in the business.  On appeal, wife contends

that the Circuit Court of the City of Virginia Beach ("Virginia Beach Circuit Court" or "circuit

court") ignored the express terms of their agreement.  Wife further argues that the Virginia

Beach Circuit Court failed to rule on whether certain interpleader funds were subject to properly

perfected and enforceable attorney's liens.  For the reasons stated below, we affirm the circuit

court's decision.

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Background

Under settled principles of appellate review, we view the evidence in the light most favorable to the prevailing party, and we grant that party the benefit of any reasonable inferences flowing from the evidence presented. Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003). Accordingly, we view the evidence pertaining to the issues raised in wife's assignments of error in the light most favorable to husband. So viewed, the evidence is as follows.

The parties were married on June 5, 1982 and separated on February 15, 2008. Wife filed for divorce on August 7, 2009. The parties entered into a consent *pendente lite* order on June 21, 2010 which, among other things, stated that each party was responsible for his or her own separate debts incurred after June 1, 2010, the date of their last separation.

Husband was a fifty percent (50%) owner in Rising Tide Holding Company, LLC, and RIC Capital Ventures, LLC, (collectively, "Rising Tide"). Rising Tide was sold to AEG, Inc., in 2014. The sale proceeds, after the payment of certain debts, were deposited with the Norfolk Circuit Court in connection with an interpleader action. This action was filed to resolve any prior claims and distribute the remaining funds to the two Rising Tide shareholders, husband and his former partner, Scott Benton. The two shareholders were the subject of multiple lawsuits relating to the mismanagement of funds, claims of wrong-doing by both husband and Benton, and a suit to dissolve the companies (the "Centennial case"). Husband and Benton each filed suit requesting to be paid in whole or in part from their partner's share of the net sale proceeds.

At a hearing in the divorce case, husband and wife stipulated that wife was entitled to a fifty percent (50%) share of any proceeds received by husband for his ownership in Rising Tide. On June 25, 2015, the Virginia Beach Circuit Court entered an injunction order dictating that the proceeds were to be preserved, and enjoined the parties from disposing of the same, as well as

any other marital asset. Divorce counsel for wife sent copies of this order to the attorneys involved in the interpleader action on July 23, 2015.

The interpleader action concluded with a final order of disbursement, entered on October 8, 2015. Proceeds, in the amount of $390,262.27, were disbursed from the interpleader fund to Wayne Williams, counsel for husband in the interpleader action. Counsel for wife again sent notice of wife's interest in those funds and of the injunction order to Mr. Williams in a letter on October 14, 2015. The letter also stated that "no disbursements should be made from the [proceeds which Mr. Williams was to receive] without [wife's] prior written approval."

Husband incurred significant attorney's fees with several law firms as a result of the Centennial case and other matters. All of these debts were incurred after June 1, 2010. On November 3, 2015, husband, unilaterally and without notice to wife, directed Williams to pay $15,114.40 of the interpleader proceeds to the firm of Shuttleworth, Ruloff, Swain, Haddad and Morecock ("Shuttleworth") for legal fees. These fees were incurred relating to the defense and representation of husband and his companies in a post-separation federal tax evasion investigation.

Husband and wife entered into a separation agreement on December 3, 2015. The separation agreement stated that each party was responsible for any and all debts that he or she incurred after February 15, 2008, the date of their initial separation. The separation agreement also stated that all equitable distribution claims were resolved and that the agreement settled all rights and obligations arising from the marriage. Furthermore, the agreement provided that

> The parties agree that $168,000.00 (of the approximately $390,000[.00]) currently held by Williams Deloatche, PC pursuant to the Norfolk Order shall be immediately disbursed as follows:
>
> $84,018.12 to Wife
> $31,000.00 to Wife

$53,018[.00] to Husband[1]

> The remaining balance [of the interpleader action proceeds – $222,226.15] may be subject to attorney liens. The remaining balance, if any, shall be disbursed equally between Husband and Wife, however, counsel for the parties shall be able to discuss and negotiate the remaining claims to the balance held by Williams Deloatche. The parties agree that any and all capital gains tax liability and capital losses associated with the sale of [Rising Tide] to AEG shall be equally divided between the parties.

In December of 2015, husband unilaterally approved the disbursement of additional amounts of the interpleader action proceeds without giving any notice to wife. Husband, via Williams, disbursed $10,935 to Kelly Michaelson for tax work on December 7; $180,000 to LeClair Ryan, P.C., on December 18; and $10,262.27 to Williams Deloatche, P.C., on December 31. Williams divided the remaining $5,914.48 evenly between husband and wife. Williams notified wife of these disbursements in a letter dated December 31, 2015. Wife objected to the disbursements.

On February 3, 2016, wife filed a show cause petition against husband for unilaterally disbursing the interpleader funds without her written consent in violation of the consent *pendente lite* order and the injunction order. On September 28, 2016, wife filed a motion to compel the payment of her share of the disbursed interpleader action proceeds. The parties' final decree of divorce was also entered on September 28, 2016. While the final decree reserved the matter on the docket to hear the motion to show cause, it did not expressly refer to the motion to compel.[2]

The Virginia Beach Circuit Court held a hearing on wife's motion to show cause and her motion to compel on September 29, 2016. In ruling on the motions, the circuit court stated that

---

[1] The $168,000 was distributed according to the terms of the agreement and is not at issue on appeal.

[2] It is unclear from the record whether the motion to compel was filed before or after the final decree was entered on September 28, 2016.

- 4 -

"[Husband] ha[s] prove[n] by the preponderance of the evidence that [the fees were incurred to . . . preserve the [marital property]." The circuit court ruled that, although husband should not have disbursed the funds without wife's consent, husband would not be held in contempt of court. Accordingly, the circuit court dismissed wife's motion to show cause. The circuit court also denied wife's motion to compel the payment of her share of the disbursed funds. Wife appealed both decisions to this Court.

<u>Analysis</u>

Wife's assignments of error challenge the Virginia Beach Circuit Court's denial of her motion to show cause and her motion to compel payment under the June 21, 2015 consent *pendente lite* order, the June 25, 2015 injunction order, and the December 3, 2015 separation agreement. We address each motion separately.

I. Motion to Show Cause

On February 3, 2016, wife filed a motion for husband to show cause as to why he should not be held in contempt of court for disbursing the interpleader funds unilaterally, and without her written consent in violation of the June 21, 2015 consent *pendente lite* order and the June 25, 2015 injunction order. The Virginia Beach Circuit Court found husband was not in contempt of court despite his failure to comply with the terms of the orders.

As conceded by wife on brief and at oral argument, the Virginia Beach Circuit Court's decision declining to hold husband in civil contempt of court is not reviewable on appeal. Jenkins v. Mehra, 281 Va. 37, 48, 704 S.E.2d 577, 583 (2011). Although Code § 19.2-318 states that a judgment holding a party in civil contempt of court may be appealed to this Court, the Supreme Court has concluded "that Code § 19.2-318 does not provide appellate jurisdiction for either [the Supreme] Court or the Court of Appeals to review the judgment of the circuit court *dismissing* the rule to show cause and refusing to hold [a party] in civil contempt of court." Id.

(emphasis added).  Accordingly, we do not have appellate jurisdiction to consider the show cause decision.

## II.  Motion to Compel

On the same day the final decree of divorce was entered, wife filed a motion to compel payment based on the June 21, 2015 consent *pendente lite* order, the June 25, 2015 injunction order, and the property settlement agreement.  The Virginia Beach Circuit Court denied the motion.  For the reasons that follow, we affirm the circuit court's decisions.

### A.  Consent Pendente Lite Order and Injunction Order

A *pendente lite* order is an interlocutory order that becomes inoperative upon the entry of a final decree.  See Code § 20-79; Beatty v. Beatty, 105 Va. 213, 215, 53 S.E. 2, 3 (1906); Pinkard v. Pinkard, 12 Va. App. 848, 851, 407 S.E.2d 339, 341 (1991).

> The decree supersedes the order and disposes of it.  The court
> speaks only through the decree, which is as eloquent in its
> omissions as in its express provisions.  Every preceding order in
> the suit is terminated upon entry of the final decree unless there be
> an express reservation.  It must be assumed that the decree settles
> and disposes of the whole controversy between the parties and of
> everything incidental or ancillary thereto.

Holmes v. Holmes, 211 P.2d 946, 955 (Wyo. 1949) (quoting Lief v. Lief, 178 A. 762, 763 (N.J. 1935)).

The consent *pendente lite* order and the injunction order were *pendente lite* orders entered by the Virginia Beach Circuit Court that, by their very definition, were only to remain in force during the pendency of the divorce litigation.  As the final decree in this case failed to expressly reserve the *pendente lite* orders at issue, the final decree superseded and disposed of them.  Accordingly, they could not be enforced through the motion to compel (i.e., husband could not be compelled to abide by them).

In her motion to compel payment,[3] wife also seeks to enforce the parties' December 3, 2015 separation agreement. On appeal, wife contends that the attorney's fees and other bills paid with the interpleader proceeds were the separate debt of husband. Wife argues that the Virginia Beach Circuit Court did not properly interpret the separation agreement when it ruled that husband's disbursement of the remaining balance of the interpleader funds from wife's property was permissible. For the reasons that follow, we disagree.

As a marital agreement is a form of a contract, "[t]he construction of a marital agreement is subject to the rules of contract construction generally." Plunkett v. Plunkett, 271 Va. 162, 166, 624 S.E.2d 39, 41 (2006). Accordingly, we apply the same standard of review to the circuit court's decisions involving the interpretation of the parties' marital agreements that we would apply to its interpretation of other types of contracts. See Craig v. Craig, 59 Va. App. 527, 537, 721 S.E.2d 24, 28 (2012).

Questions involving the interpretation of a contract present issues of law that we review *de novo*. Plunkett, 271 Va. at 166, 624 S.E.2d at 41. While we give deference to the circuit court's factual findings underlying its interpretation of the contracts at issue, "we are not bound by the [circuit] court's conclusions as to the construction of the disputed provisions." Craig, 59 Va. App. at 537, 721 S.E.2d at 28 (quoting Bergman v. Bergman, 25 Va. App. 204, 211, 487 S.E.2d 264, 268 (1997)). "[R]ather, we have an equal opportunity to consider the words of the

---

[3] We note that motions to compel are generally utilized in a discovery context. See Rule 4:12 (outlining conditions under which a party may apply for an order compelling discovery); Motion to compel discovery, Black's Law Dictionary (10th ed. 2009) (defining a "motion to compel discovery" as a "party's request that the court force the party's opponent to respond to the party's discovery request (as to answer interrogatories or produce documents)). However, wife has not provided any precedent, and in our research, we cannot find a single instance in which a party has used a motion to compel as a vehicle for the enforcement of a separation agreement.

contract within the four corners of the instrument itself." Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 631, 561 S.E.2d 663, 667 (2002).

"In ascertaining the parties' intention regarding specific contract provisions, we consider the document as a whole." Pocahontas Mining v. CNX Gas Co., 276 Va. 346, 353, 666 S.E.2d 527, 531 (2008). "No word or phrase employed in a contract will be treated as meaningless if a reasonable meaning can be assigned to it, and there is a presumption that the contracting parties have not used words needlessly." Id. Moreover, when interpreting the terms of an ambiguous contract, "we consider the words employed by the parties in accordance with their usual, ordinary, and popular meaning." Id.

Wife contends that the bills paid with the balance of the interpleader proceeds held by Williams Deloatche were the separate debt of husband covered by the Debts section of the agreement because they were incurred after the date of separation. Husband, however, contends that the bills were expressly addressed in the Business section of the separation agreement, and therefore, excluded from its Debts section. Accordingly, we must determine whether the attorney's fees and other debts at issue are covered by the Debts section or the Business section of the separation agreement. This determination hinges on the language used in the Business section. Specifically, we must construe whether the language "may be subject to attorney's liens" refers strictly to the statutory attorney's liens referenced in Code § 54.1-3932, or more generally to all attorney's fees incurred in the matter.

"A court's primary focus in considering disputed contractual language is to determine the parties' intention, which should be ascertained, whenever possible, from the language the parties employed in their agreement." Id. at 352, 666 S.E.2d at 531. The Debts and Business sections of the separation agreement provide the terms at issue in this case. The Debts section states that

> Husband covenants and agrees that he will not incur or contract
> any debts in the name of Wife and agrees to hold her harmless

from any debt, contract or obligation incurred by him after the Separation Date.

The Business section states that

The parties acknowledge that Husband's interest in Rising Tide Holding Company, LLC and RIC Capital Ventures, LLC were sold/ transferred to AEG and the proceeds from the sale of the business were the subject of litigation that was pending in Norfolk Circuit Court styled <u>Williams Mullen Clark & Dobbins, PC v. Rising Tide Holding Company, LLC, et al.</u>, Case No. CL 13-1348. Pursuant to a Final Order of Disbursement Order entered by the Norfolk Circuit Court, certain proceeds were disbursed to the owners of the same (i.e. Husband and Mr. Benton) and such funds are subject to an injunction order entered by Virginia Beach Circuit Court in the Divorce litigation. The parties agree that $168,000[.00] (of the approximately $390,000[.00]) currently held by Williams Deloatche, PC pursuant to the Norfolk Order shall be immediately disbursed as follows:

$84,018.12 to Wife

$31,000.00 to Wife

$53,018[.00] to Husband

*The remaining balance may be subject to attorney liens. The remaining balance, if any, shall be disbursed equally between Husband and Wife, however, counsel for the parties shall be able to discuss and negotiate the remaining claims to the balance held by Williams Deloatche . . . .*

(Emphasis added).

"The pole star for the construction of a contract is the intention of the contracting parties as expressed by them in the words they have used . . . ." <u>Va. Elec. & Power Co. v. N. Va. Reg'l Park Auth.</u>, 270 Va. 309, 316, 618 S.E.2d 323, 326 (2005) (quoting <u>Ames v. Am. Nat. Bank</u>, 163 Va. 1, 38, 176 S.E. 204, 216 (1934)).

If the language of the instrument leaves the meaning of the parties in doubt, the court will take into consideration the occasion which gave rise to it, the obvious design of the parties, and the object to be attained, as well as the language of the instrument itself, and give effect to that construction which will effectuate the real intent and meaning of the parties.

- 9 -

<u>Pellegrin v. Pellegrin</u>, 31 Va. App. 753, 759, 525 S.E.2d 611, 614 (2000) (quoting <u>Va. Ry. &</u>

<u>Power Co. v. City of Richmond</u>, 129 Va. 592, 611, 106 S.E. 529, 536 (1921)).

> The facts and circumstances surrounding the parties when they made the contract, and the purposes for which it was made, may be taken into consideration as an aid to the interpretation of the words used, but not to put a construction on the words the parties have used which they do not properly bear.

<u>Va. Elec. & Power</u>, 270 Va. at 319, 618 S.E.2d at 328 (quoting <u>Seaboard Air Line R.R. Co. v.</u>

<u>Richmond-Petersburg Tpk. Auth.</u>, 202 Va. 1029, 1033, 121 S.E.2d 499, 503 (1961)).

The Business section was specifically included in the separation agreement to manage the interpleader proceeds at issue in this case. It specifically referenced the final disbursement order for the interpleader proceeds and directed how the proceeds were to be distributed between the parties. The Business section further instructs that any "remaining balance may be subject to attorney liens." A reasonable inference can be made from this language that the parties intended to include debts pertaining to the dissolution of Rising Tide in the Business section of the separation agreement.

Although the Business section of the property settlement agreement provided that the remaining balance of the interpleader proceeds "may be subject to attorney liens," it also enabled the parties "to discuss and negotiate the remaining claims to the balance . . . ." The inclusion of this language in the agreement suggested that the parties intended for any attorney's fees to be negotiated in an effort to preserve the interpleader funds, a marital asset. The Virginia Beach Circuit Court acknowledged this language, and noted that the bills "were [incurred] to straighten out the books, to reduce down the debts, to make as much disposable profit out of the sale of the business as possible, therefore, protecting a marital asset."

If the parties only intended to include perfected attorney's liens in the Business section, the parties could not attempt to negotiate those liens until after perfection. At that point, their

ability to negotiate the attorney's fees at issue would likely be impaired. Thus, interpreting the Business section to apply only to perfected attorney's liens is inconsistent with the negotiation clause of the section. Furthermore, it would be inconsistent with the overriding intent of the parties to preserve the value of their marital assets.

We hold that the fees at issue were intended to be included in the Business section of the separation agreement. The purpose of the Business section was to direct the distribution of the interpleader proceeds, and the language of that section implied that the parties intended for attorney's fees to be paid out of the remaining balance of the proceeds. Further, prior to the entry of the separation agreement and without objection from wife, husband unilaterally instructed that some attorney's fees be paid from the interpleader proceeds. Thus, although the bills paid with the interpleader proceeds were incurred after the date of separation, they were not the separate debt of husband. They were incurred in order to preserve a marital asset, and therefore, wife was also responsible for the payment of these bills.

Conclusion

Because we find that the Virginia Beach Circuit Court did not err in its interpretation of the property settlement agreement, we affirm the decision of the circuit court. For the reasons stated above, we dismiss the remainder of wife's appeal.

Affirmed in part; dismissed in part.